**Yetta ELLIS and Winston Smith, Plaintiffs,**

v.

**WAL–MART STORES, INC., Defendant.**

Civil Action Nos. 95–D–925–N, 95–D–1135–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 30, 1996.

Lucie U. McLemore, Montgomery, AL, for Yetta Ellis, Winston S. Smith.

Barry V. Frederick, William Kennedy Hancock, Charles A. Powell, III, David W. Proctor, William G. Somerville, III, John W. Sheffield, Spencer A. Kinderman, Jennifer F. Swain, Johnston, Barton, Proctor & Powell, Birmingham, AL, for Wal–Mart Stores, Inc.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Wal–Mart Stores, Inc.'s motion, filed November 1, 1995, for summary judgment on all claims asserted by Plaintiff Yetta Ellis. The plaintiff responded in opposition on June 26, 1996, to which the defendant replied on May 17, 1996. The plaintiff asserts that the defendant fired her because she is black and further subjected her to a hostile work environment on the basis of race, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17. After careful consideration of the evidence, the court finds that the defendant's motion for summary judgment is due to be granted.

## JURISDICTION

Based upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## STANDARD OF REVIEW

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## FINDINGS OF FACT

The plaintiff, a black female, was hired by Wal–Mart store # 930 in Montgomery, AL, on May 1, 1992, to work as a stocker. She was discharged January 11, 1994. The defendant alleges that the plaintiff was terminated as part of an economically necessary reduction in force or "RIF."

The defendant asserts that Store Manager Gary Barnes ("Mr. Barnes") and Co–Manager Artie Moore ("Mr. Moore") terminated more than thirty employees as part of the RIF. First, all of the temporary employees were terminated. Next, those employees with the lowest ratings on their performance evaluations and the most performance coachings ("write-ups") were terminated. Mr. Barnes and Mr. Moore reviewed each employee's personnel file in making this determination.

The record reflects that the plaintiff received a write-up January 7, 1994 for writing four insufficient funds checks to the defendant and then failing to pay them for more than a month after their return. The defendant asserts that no other employee with fewer write-ups and lower performance ratings was retained. In rebuttal, the plaintiff offers evidence that eight other Wal–Mart store # 930 employees wrote insufficient funds checks but were not disciplined.[1] Aff. of Stephanie Shields at ¶ 5 attached as Ex. B to Pl.'s Br. in Opp. to Def.'s Mot. for Summ.J. Of those eight employees, one was black. *Id.*

Joline Eddins, a white female, was a stocker at store # 930 during the RIF. Ms. Eddins was not discharged; instead she was moved to a part-time position in the snack

---

**1.** The defendant is incorrect in asserting that this evidence cannot be considered by the Court. *See* discussion *infra.*

bar.[2] Ms. Eddins had prior snack bar experience and asked Mr. Barnes about being reassigned to that position.

Michael Lloyd, a black male working on the night receiving crew, was slated to be discharged in the RIF but was instead reassigned to a full-time day stocker position. Mr. Lloyd's performance rating was higher than the employee's discharged in the RIF.

The defendant has a policy that discharged employees must submit a new application if they want to be considered for rehire. Upon her discharge, the plaintiff was rated eligible for rehire. The plaintiff did not submit a new application to any Wal–Mart store. Ellis Depo. at 34–35, 42, 75, 78–79, 136.

The plaintiff alleges that the next person hired as a stocker was a white female.[3] The record reflects that Leigh Glenn, a white employee who had been classified as a stocker prior to her discharge in the RIF, was rehired April 29, 1994. Five other employees terminated in the RIF were also rehired. These employees, their former position and date of rehire were: Joseph Jones, black sales clerk, March 9, 1994; Katrina Betsill, white cashier, March 14, 1994; Denise Jones, black sales clerk, March 19, 1994; Shirley Miller, black sales clerk, April 29, 1994 and; Terri Davis, black cashier, June 21, 1994. *See* Decl. of Gary Barnes at ¶ 11, Pl.'s Ex. C attached to Br. in Opp. to Def.'s Mot. for Summ.J.

The plaintiff alleges that her discharge was racially motivated. She claims that she was harassed by Mr. Barnes prior to her discharge. The plaintiff asserts that, in response to her request for time off to visit the doctor, Mr. Barnes stated "You were off last week," and "That sounds like a personal problem." Other Wal–Mart management are alleged to have made harassing comments regarding the plaintiff's time off from work, tardiness, and the length of her breaks.[4]

The plaintiff filed her charge of discrimination with the EEOC July 7, 1994. She received her Notice of Right to Sue April 10, 1995. The plaintiff commenced this action July 10, 1995. In her complaint the plaintiff appears to raise a Title VII race discrimination claim based on two theories, wrongful discharge and hostile working environment.

## DISCUSSION

In an action alleging disparate treatment under Title VII, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 2753–54, 125 L.Ed.2d 407 (1993); *see e.g., Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as here, a plaintiff can establish intentional discrimination under the three-part burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's,* 509 U.S. at 518, 113 S.Ct. at 2753.

---

**2.** The plaintiff's evidence that Ms. Eddins was terminated, rather than transferred is inadmissible hearsay and will not be considered. *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991) *cert. denied,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992).

**3.** In the affidavit of Clara L. Robertson submitted by the plaintiff, it is alleged that a white female named "Ruth" was hired as a stocker within two weeks of the plaintiffs' discharge. However, the plaintiff offers no basis for this allegation and places no reliance on it in her brief. Further, this allegation is contradicted by the defendant based on a review of store payroll records. *See* Decl. of Pete White attached as Ex. A to Def.'s Reply to Pl.'s Mem. in Opp. to Mot. for Summ.J. Thus, the Court finds this allegation does not raise a disputed issue of material fact.

**4.** Specifically, the plaintiff alleges four other incidents of harassment. The plaintiff alleges that on one occasion in 1993 a manager, Mr. Roberts, told her she was taking too long on her break. On a second occasion, either September or October of 1993, Mr. Roberts would not initially allow the plaintiff to "clock-in" after being late for her shift, but allowed others (both black and white employees, Ellis Dep. at 103) to "clock-in." A third incident happened November 29, 1993 when the plaintiff "called in" because her son was sick and Mr. Roberts replied that the plaintiff missed every Monday. In the final incident, the plaintiff told Mr. Barnes that she had to take time off to take her infant to the doctor and the Mr. Barnes replied, "sounds like a personal problem." Ellis Depo. at 14, 15, 18, 20–22, 43.

Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first must raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). The purpose of the prima facie case is to show an adverse employment decision that resulted from a discriminatory motive. *See Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1143 (11th Cir.1983).

If a plaintiff succeeds in showing a prima facie case of discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant's burden is "exceedingly light," *Perryman*, 698 F.2d at 1142, as it "must merely proffer [nondiscriminatory] reasons, not prove them." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994) (citation omitted) (brackets supplied). Once the defendant satisfies its burden of production, the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the only inquiry becomes "whether plaintiff has proven 'that the employer intentionally discriminated against [him or her].'" *St. Mary's*, 509 U.S. at 511, 113 S.Ct. at 2749 (citation omitted). To prove discrimination after the *McDonnell Douglas* framework drops out, a plaintiff must show that the defendant's proffered reason was a pretext for discrimination, "[b]ut a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." [5] *Id.* at 515, 113 S.Ct. at 2752 (emphasis supplied) (citation omitted).

### I. Plaintiff's Claim for a Hostile Work Environment based upon Race Discrimination

Discriminatory conduct results in a hostile work environment when it is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin," thus, offending "Title VII's broad rule of workplace equality." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). To prevail on her hostile work environment claim, the plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; and (4) the harassment affected a term, condition or privilege of employment. *Henson v. Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982). Additionally, in order to hold the employer liable on a Title VII hostile work environment claim, the plaintiff must show either that: (1) the harasser is the employer or one of its agents; or (2) the employer knew or should have known of the harassment caused by co-workers, but failed to take corrective action. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir.1987); *see also Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317 (7th Cir.1992).

To satisfy the fourth element, a plaintiff must show that the harassment was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citation omitted). In determining this question, courts must look to the totality of circumstances. *Id.* at 22–23, 114 S.Ct. at 371. While a "'mere utterance of an ... epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII," the environment does not have to be so severe as to cause a "nervous breakdown" or "seriously affect employees' psychological

---

5. *St. Mary's* slightly modified the Title VII disparate treatment framework. Previously, a plaintiff could satisfy his or her Title VII burden of proof "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of belief." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *see Miranda v. B & B Cash Grocery Store,* *Inc.*, 975 F.2d 1518, 1529 (11th Cir.1992) (The plaintiff satisfied her burden by showing that the employer's reasons were unworthy of credence.); *Caban–Wheeler v. Elsea*, 904 F.2d 1549, 1554 (11th Cir.1990) (same). In other words, "the falsity of the employer's explanation [was] *alone enough* to compel judgment for the plaintiff." *St. Mary's*, 509 U.S. at 517, 113 S.Ct. at 2752 (emphasis supplied).

well-being." *Id.* at 20, 114 S.Ct. at 370–71 (citations omitted).

Initially, the Court notes that the plaintiff has failed to address her hostile working environment claim in her brief. The plaintiff has failed to point specifically to any evidence in the record which could support her claim, and thus, failed to carry her burden of production. *See supra* p. 1524. Nevertheless, based on its own review of the evidence, the Court finds that the plaintiff has failed to raise a genuine dispute of material fact with respect to the third and fourth elements of her hostile working environment claim.

■ The plaintiff has failed to offer any admissible evidence which suggests that the alleged harassment was based on her race. On their face, the defendant's criticisms of the plaintiff appear to be entirely performance related. The plaintiff has failed to adduce competent evidence that suggests these criticisms were directed only at the plaintiff, or only at black employees in general. Therefore, the Court finds that any incidents of harassment were not racially motivated, and thus, there is no Title VII violation. *See Nix v. WLCY Radio Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

■ Furthermore, even if the harassment was racially motivated, the Court finds that it was not pervasive. It is well established that isolated and sporadic incidents of harassment are insufficient to create a hostile working environment. *Rogers v. Equal Employment Opportunity Comm'n,* 454 F.2d 234, 237–238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972); *see Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981) (explaining that there must be a "steady barrage of opprobrious racial comment"); *see Clayton v. White Hall School Dist.,* 875 F.2d 676, 680 (8th Cir.1989) (affirming summary judgment for the defendant because the plaintiff's "single incident of alleged [race] discrimination" was insufficient to establish a claim for hostile work environment). The four alleged incidents of harassment which the Court finds in the record are not sufficient to establish this element of the plaintiff's claim. Therefore, for the foregoing reasons, the Court finds that the defendant's motion for summary judgment is due to be granted on this claim.

## II. Plaintiff's Wrongful Termination Claim based upon Race Discrimination

■ Where an employer asserts that an employee's termination was the result of a RIF, an employee establishes a prima facie case of discrimination by showing: "(1) that he [or she] was in a protected group and was adversely affected by an employment decision; (2) that he [or she] was qualified to assume another position at the time of discharge . . .; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Barnes v. Southwest Forest Indus., Inc.,* 814 F.2d 607, 609 (11th Cir.1987) (citing *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. Unit B 1981)).[6] The plaintiff may satisfy the third element by introducing "direct, circumstantial, or statistical evidence" indicating that the defendant singled him or her out for discharge based upon unlawful discrimination. *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).

■ The defendant concedes that the plaintiff satisfies the first element of the prima facie case for her wrongful termination claim based upon race. The defendant further assumes, *arguendo,* and only for purposes of its motion for summary judgment, that the plaintiff can satisfy the second element because the stockperson position which she occupied was not entirely eliminated. The defendant, however, argues that, regarding the third element, the plaintiff has failed to present any evidence sufficient to with-

---

**6.** While liability in *Barnes* was predicated under the Age Discrimination in Employment Act, courts apply the same analysis in determining whether a violation under Title VII has occurred.

*McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995).

stand summary judgment on her wrongful termination claim.

The plaintiff claims that she has satisfied this third element by presenting evidence that after her discharge, she was replaced by a white employee. Although this evidence will establish a prima facie case in most wrongful termination cases, the inference is significantly weaker within the context of an RIF discharge. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082–83 (11th Cir.1990).[7] However, because the plaintiff's position (stocker) was not completely eliminated in the RIF, if the plaintiff presents evidence that she was "replaced," and that that replacement was a white employee, such evidence could create an inference of discrimination.[8]

■ The record indicates that a white employee may have been hired as a stocker on April 29, 1994.[9] Whether this employee, hired more than three months after the plaintiff was discharged, was a "replacement" for the plaintiff, or whether this employee was simply filling a newly created position, is a question of fact for the jury. Therefore, the court finds that the plaintiff has presented circumstantial evidence from which a factfinder might infer that the defendant "singled [the plaintiff] out for discharge based upon unlawful discrimination," and thus, the plaintiff has established her prima facie case. *Barnes*, 896 F.2d at 1465.

■ However, the court finds that the defendant has rebutted an inference of discrimination by presenting evidence that it selected the plaintiff for termination based upon her poor work performance. Firing an employee based upon a "company wide [reduction-in-force] and poor work performance" is a legitimate and nondiscriminatory reason sufficient to rebut a prima facie case of discrimination. *Earley*, 907 F.2d at 1084 n. 5.

Consequently, to survive summary judgment, the plaintiff must prove both that the stated reason for discharge was false, *and* that discrimination was the real reason. *St. Mary's*, 509 U.S. at 515, 113 S.Ct. at 2751–52. Here, the court finds that the plaintiff simply has not provided any evidence that the performance-based rationale for the plaintiff's termination was pretextual.

The plaintiff has not submitted any evidence that any other employee was retained who had as many write-ups and performance ratings as low as she had. In fact, the plaintiff has not filed with the court any of the personnel files of any other stockpersons who worked at Wal–Mart. Without any comparative evidence of similarly-situated white employees, the court has nothing from which it can infer that her termination was related to her status as a black person.

The plaintiff appears to point to her evidence that other employees wrote insufficient funds checks without receiving "write-ups" to rebut the defendants legitimate non-discriminatory reason. This evidence is insufficient to sustain the plaintiff's burden for several reasons.

First, the record contains merely the bald assertion that other employees wrote bad checks and that they were not disciplined. The Court finds that this assertion is only competent evidence to the extent that bad checks were written by other employees.[10]

---

7. In the context of an RIF, employees are discharged because it is no longer economically feasible to retain them. Thus, a discharged employee leaves no vacancy behind her, the position is simply eliminated, and a new employee fills a newly created position rather than acting as a "replacement" for the discharged employee.

8. The plaintiff asserts that the Court should evaluate her claim under the assumption that she was employed as a cashier as well as a stocker. Assuming without deciding that the plaintiff is correct, the Court finds its analysis unchanged.

9. The Court finds that Leigh Glenn was a white woman who may have been hired for a stocker position. Decl. of Gary Barnes at ¶ 11, Pl.'s Ex. C attached to Pl.'s Br. in Opp. to Def.'s Mot. for Summ.J., Aff. of Clara Robertson at ¶ 3.

10. The court finds that the affiant, Stephanie Shields, as Cash Office Manager, could reasonably be expected to have knowledge of returned checks. However, the Court finds no basis for her statement that these other employees were not disciplined. It is not inherent in the position of Cash Office Manager that one would have knowledge of disciplinary matters. For the Court to consider her evidence, the plaintiff must present more than speculation and conclusory allegations. *See Carter v. City of Miami*, 870 F.2d

Without competent evidence that these other employees were not disciplined the Court cannot infer that defendant's proffered reason is pretextual.

Second, the plaintiff does not provide any evidence about the circumstances surrounding the bad checks written by other employees. The record indicates that the plaintiff was "written-up" because she wrote her four insufficient fund checks *and* failed to pay the returned checks for over a month. Aff. of Stephanie Shields ¶ 5. Before the Court can make a comparison, the Court must receive evidence that the plaintiff and the other employees were in a similar situation.

Finally, the plaintiff's evidence does not disclose when the other employees wrote the bad checks or who the employees' supervisor was at the time the bad checks were written. The alleged disciplinary disparity is inapposite unless the other employees were supervised by the plaintiff's supervisor or the plaintiff's supervisor knew the other employees were not disciplined for similar violations. *See Jones v. Gerwens,* 874 F.2d 1534, 1541–42 (11th Cir.1989).

The Court also finds that the subsequent rehiring of six of employees discharged in the RIF does not raise a genuine issue of material fact for the jury. Although the plaintiff was eligible for rehire, it is undisputed that she did not apply for rehire. Moreover, of the six employees rehired, four were black. As discussed earlier, any possible inference of discrimination raised by the plaintiff's evidence is a weak one in the context of this case. *See supra* pp. 1527–1528. Thus, the plaintiff has failed to rebut the defendant's legitimate non-discriminatory reason for discharging the plaintiff.

Accordingly, the court finds that the plaintiff has failed to sustain her burden of raising a genuine issue of material fact on her claim that she was wrongfully terminated because of her race. Hence, summary judgment is due to be granted on this claim.

### ORDER

Accordingly, and for the foregoing reasons, the court finds that defendant Wal–Mart

578, 585 (11th Cir.1989); *Grigsby v. Reynolds Met-*

Stores, Inc.'s motion for summary judgment is due to be granted.

*als Co.,* 821 F.2d 590, 597 (11th Cir.1987).