Aric EVANS, Plaintiff,

v.

McCLAIN OF GEORGIA, INC.,
and McClain Industries,
Inc., Defendants.

No. 5:95–cv–112–1 (HL).

United States District Court,
M.D. Georgia,
Macon Division.

July 29, 1996.

Norman J. Slawsky, David J. Worley, Atlanta, GA, for plaintiff.

Wallace Warren Plowden, Jr., Macon, GA, Thomas H. Williams, Detroit, MI, for defendants.

## *ORDER*

LAWSON, District Judge.

Before the Court is Defendants' motion for summary judgment against plaintiff Aric Evans, who has brought suit alleging that he was denied a promotion and later terminated from his job on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 (specifically 42 U.S.C. § 2000e–2(a)(1)) and 42 U.S.C. § 1981, and that he is entitled to receive overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* For the reasons set forth in this order, the motion is granted and summary judgment shall be entered for the defendants, McClain of Georgia, Inc., and McClain Industries, Inc. The facts of this case are described below, taken from the evidence presented by both parties and construed in the light most favorable to the Plaintiff, followed by a discussion of the relevant principles of law.

## I. FACTS

McClain of Georgia, Inc., a division of McClain Industries, Inc., operates an industrial plant in Macon which fabricates large steel trash bins and compactors. Plaintiff, who is black, worked at the plant for approximately eight years, and by the time of the events in question had risen to a position of managerial authority, although his authority was never consistently defined. The record shows that in the fall of 1994 the plant's management hierarchy was in a state of confusion. In July, 1994, the plant's manager, Kenneth Graham, resigned, and initially no one was hired to take his place. The assistant manager, Al Buckalew, assumed the role of manager, but only on a temporary basis, with assistance from Plaintiff, who "was effectively running the entire plant." Defendants' Memorandum of Authorities, p. 2. Plaintiff was not given any formal title or position, but remained the lead man for the machine shop while he worked with Buckalew.

On October 3, 1994, Kenneth McClain, chairman of the board and president of McClain Industries, Inc., hired a white man named Ken Cole as the new plant manager. While Cole was manager, he had difficulty filling the subordinate positions. Al Buckalew remained in an unofficial assistant capacity, and told Plaintiff that Plaintiff would be "next in command." Another lead man, Tim Hall, stormed out of the plant in protest, saying that he was not going to work for a "nigger." McClain decided to make Evans the stock manager and make Hall a "plant manager." The evidence does not show the exact nature of Tim Hall's position or of Plaintiff's position after the change in management, but it does not indicate that Hall was made Plaintiff's superior. Conditions at the plant deteriorated under Cole's management, and McClain decided to fire him on November 22, 1994.

From November 22, 1994, until the termination of the Plaintiff, the operations of the plant were in a state of disorder. Because it was beginning production of a new type of product referred to as an "intermodal" container, the company brought in Neal Flowers, a manager from one of its plants in Oklahoma with experience in the production of intermodals, to become the plant manager. As a result of the reorganization, Plaintiff became a salaried employee and was given the title of assistant manager, but his duties were never defined. According to Plaintiff's testimony, he was first put in charge of ordering inventory, then ordered to manage the night shift, later called back as floor manager of the day shift, and finally asked to clean up the plant. Evans has stated that during January and February of 1995 he was spending at least seventy percent of his time supervising, and the other thirty percent training workers.

McClain was not satisfied with Plaintiff's performance, and threatened to fire him at one point, but was persuaded by Neal Flowers to give Plaintiff another chance. According to Plaintiff, McClain made increased demands and promised to hold Plaintiff accountable for any defective products that left the plant. Finally, on February 24, 1995, Kenneth McClain fired Plaintiff, and allowed Tim Hall to assume the responsibilities of assistant manager. Plaintiff contends that he was fired for racial reasons and because of his pro-union activities. (The union claims are part of a separate suit before another court and are not considered here.)

Defendants respond that Plaintiff was terminated for non-discriminatory reasons—for failing to order parts properly, for telling employees they were targeted to be fired, for talking down other managers, for hurting company morale, and for making "veiled threats." Plaintiff claims that had he been white, he would have been given a second chance, and refers to a prior incident when a white employee named Oliver brought a gun to work and was neither disciplined nor discharged. Plaintiff also presents evidence that McClain would not hire black office personnel, and would give loans to white employees but not to black employees.

Finally, Plaintiff claims that he worked many hours of overtime without compensation during his tenure as assistant manager. He argues that he was only made a salaried employee in order to remove him from his union activities and that he had no supervisory duties in his position.

## II. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is [1] no genuine issue as to any material fact and that [2] the moving party is entitled to judgment as a matter of law."

At summary judgment, the initial burden is on the movant, who must show by reference to materials on file "that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). If the burden of proof at trial is on the movant, the moving party must present evidence to show that "on all the essential elements of its case . . ., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). If it is

the non-movant who has the burden of proof at trial, then the movant may meet its summary judgment burden either by presenting evidence to negate an essential element of the non-movant's claim, or by demonstrating by reference to specific portions of the record that the non-moving party cannot meet its burden of proof. *See, Clark,* 929 F.2d at 606–608.

Whether the movant or the non-movant has the burden of proof at trial, the Court must believe the evidence of the non-movant party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Any evidence presented by the movant must be viewed in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

The summary judgment burden shifts to the non-movant only if the movant meets its initial burden at trial. Then it becomes the responsibility of the non-movant to demonstrate that there is a genuine issue of material fact as to each essential element of its claim. Otherwise the movant will be entitled to judgment as a matter of law, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. For a question of fact to be "genuine," there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.,* 477 U.S. at 249–250, 106 S.Ct. at 2511. (Cites omitted). The party oppos-

ing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986)). Only those doubts about facts that are reasonable must be resolved in favor of the nonmovant. *Irby,* 44 F.3d at 953.

## III. TITLE VII AND SECTION 1981

■ To establish his right to recover under Title VII and Section 1981, Plaintiff must prove that Defendant failed to promote him and later discharged him because of his race. Title VII of the Civil Rights Act of 1964 provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981 guarantees the right of all persons to make and enforce contracts, including the right to modify or terminate, without regard to race, and has been extended by the courts to provide a federal remedy for discrimination in private employment on the basis of race. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). In cases involving Title VII and Section 1981 claims together, "the legal elements of the claims are identical." *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir.1985).

■ At the heart of the claims is the discriminatory intent of the Defendant, but matters of intent can be difficult to prove by direct evidence. In order to address that difficulty, the Supreme Court has choreographed an elaborate ritual of proof known as the *McDonnell Douglas/Burdine* test (*see, Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), which attempts to provide a formal pattern of shifting presumptions that will make it possible to infer dis-

crimination without direct evidence. With the burden of persuasion throughout the process, the plaintiff always leads in the dance. "Throughout the trial the plaintiff retains the ultimate burden of proving by a preponderance of the evidence the existence of purposeful discrimination." *Jones v. Gerwens,* 874 F.2d 1534, 1539 (11th Cir.1989). When the music begins, the plaintiff must present evidence to make out a prima facie case of discrimination by eliminating the most common non-discriminatory reasons for an adverse employment action, such as lack of qualification for the job. If the prima facie case is made, a rebuttable presumption of discrimination arises, and the defendant steps out onto the floor and makes the next move by giving legitimate non-discriminatory reasons for its action. Thus the burden shifts to the defendant, but the burden is a light one, only a burden of production. Once the non-discriminatory reasons are given, even if the reasons are not credible, the presumption of discrimination is eliminated and the music stops; the *McDonnell Douglas/Burdine* framework becomes irrelevant and the plaintiff must return to the original issue and persuade the trier of fact that the defendant "engaged in intentional discrimination on the basis of a prohibited factor." *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1557 (11th Cir.1995).

Plaintiff asserts that he was denied a promotion on the basis of race, but there is some dispute between the parties as to whether Plaintiff's complaint states a claim for denial of promotion. Although Paragraph 11 of the complaint says that "the defendants refused to promote the plaintiff on numerous occasions although he was required to perform duties similar to other supervisors and managers," the allegation is not numbered among the counts of the Plaintiff's causes of action. It is not necessary to get into issues of pleading practice to resolve this dispute, because an examination of the record shows that the Plaintiff does not present significantly probative evidence sufficient to make out a prima facie case of discriminatory denial of promotion and therefore the defendants are entitled to summary judgment. The elements of a prima facie case for discriminatory denial of promotion are: (1) the plaintiff was qualified for a promotion; (2) the plaintiff was denied the promotion; (3) the promotion was given to a member of an unprotected class or the position remained unfilled. *Redd v. City of Phenix City,* 934 F.2d 1211 (11th Cir.1991). Plaintiff has not presented enough evidence to create a genuine issue as to whether he was actually denied a promotion. The record shows that Plaintiff was given a salary and the title of assistant manager or stock manager, and, despite his argument that the promotion was in name only, the Plaintiff's own deposition states that in the shakeup after the firing of Ken Cole, Plaintiff acquired new managerial responsibilities beyond those of his previous job. On November 22 or 23, 1994, Plaintiff was put in charge of inventory for the plant. Deposition of Aric Evans, Volume II, pp. 238–239. Later, Plaintiff supervised the night shift, and then in January, 1995, he returned to supervising the day shift and the entire plant, spending approximately 70 percent of his time supervising and 30 percent of his time training employees. Evans Dep. II, at pp. 252–255. There is no significant evidence that Plaintiff's new position was not a promotion, nor is there any legal significance to the allegations against Tim Hall. Whether or not Tim Hall made the racially offensive statement attributed to him, nothing in the record suggests that Hall received a preferential promotion or that Hall was placed in a position of greater responsibility or prestige than Plaintiff enjoyed. While the record fails to describe the nature of Hall's position or the scope of his authority, it does not suggest that he was in a position above the Plaintiff, but rather shows that Plaintiff and Hall each had responsibility for a separate phase of the plant's operations, and were assistant managers of approximately equal status. Deposition of Kenneth McClain, at 84–85. The deposition evidence shows that Evans actually had a degree of authority over Hall. Deposition of Al Buckalew, pp. 36–38. It is also worthy of note that when Evans was discharged, Tim Hall took over his position, apparently in a step up from his prior position. Thus, Plaintiff has failed to show that he was denied a promotion and that the promotion was given to a member of

another class. Because Defendant has shown that Plaintiff's evidence does not create a genuine issue of material fact as to the alleged denial of promotion, Defendant is entitled to summary judgment on that issue.

 Plaintiff also seeks relief for his subsequent discharge by McClain in February of 1996, which Plaintiff alleges was motivated by improper racial discrimination. Depending on the particular facts of the case, there are several different ways to build a prima facie case of discriminatory discharge. In this case, where the Plaintiff was replaced by a member of an unprotected class, he is able to make out a case by showing (1) that he was qualified for the job, (2) that he was fired, and (3) that another person, from an unprotected class, took his place. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984). There is enough evidence in the record to create an issue about Plaintiff's qualifications, and it is undisputed that he was fired. The Defendants concede that Plaintiff was replaced by Tim Hall, a white man. Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment, p. 7.

Since Plaintiff has properly executed the first movement of the *McDonnell Douglas/Burdine* dance, the Defendants must produce legitimate, non-discriminatory reasons for the decision to discharge. Defendants point to testimony in the deposition of Kenneth McClain that shows that Plaintiff was fired for several reasons, including intimidating employees, telling employees they were targeted to be fired, failing to order parts on time, insubordination, and making threats. McClain Dep. pp. 20–21, Plaintiff's Exhibit 21. These reasons are sufficient to meet the burden of production, and the burden shifts again to the Plaintiff, who must prove that the reasons given were merely a pretext for illegal discrimination. Plaintiff argues that the reasons given by Defendants are not credible, and indeed some of the reasons, such as the "veiled threats" which Kenneth McClain inferred from a conversation about postal violence, (Transcript of Testimony before the National Labor Relations Board, November 2, 1995, p. 1096), are subject to question by a trier of fact.

 Despite the questions as to some of Defendants' proffered legitimate reasons, it is not enough for Plaintiff simply to assert that the reasons given are not credible; Plaintiff must present evidence that racial discrimination was the true reason for the discharge, as the Supreme Court explained in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). According to that case, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.,* 509 U.S. at 510, 113 S.Ct. at 2749, and rejection of the proffered reasons as lacking credibility does not compel judgment for the plaintiff. "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.,* 509 U.S. at 515, 113 S.Ct. at 2752 (emphasis in original). A fact-finder's disbelief of the reasons, together with the elements of the prima facie case, may suffice to show discrimination, but the disbelief alone is not enough. Unless there is significantly probative evidence before the court which would permit a jury or fact-finder to determine that the reasons given are pretextual, summary judgment is appropriate against the plaintiff.

Plaintiff offers three types of evidence in its attempt to establish that Defendants had a discriminatory motive for firing Plaintiff. First, there is the prima facie case itself, which alone is only minimal evidence of potential discrimination. Second, there is the evidence which calls into question the credibility of the non-discriminatory reasons offered by Defendants. The bulk of Plaintiff's arguments against summary judgment concerns this second type of evidence. Third, there are affidavits and testimony about the racial attitudes of Kenneth McClain and alleged practices at the plant which favored white employees over black employees.

 In considering the proffered non-discriminatory reasons of the Defendants, it is important to remember that Title VII and Section 1981 protect workers against discrimination, and not against poor management practices or general unfairness. The civil rights laws were not meant to eliminate

the principle of at-will employment for members of protected classes, nor do they require employers to show good cause for every decision involving a member of a protected class. "The employer may fire an employee for a good reason, a bad reason, or for no reason at all, as long as its action is not for a discriminatory reason.... The employer's stated legitimate reason ... does not have to be a reason that the judge or jurors would act on or approve." *Nix*, supra, 738 F.2d at 1187 (citations omitted). Thus, it is not enough for a plaintiff to show that he worked for a tyrannical cabal of petty dictators, unless he can show further that those dictators were tyrannical and petty only towards members of the protected group, and not towards the unprotected group. The rapid and summary dismissal of manager Ken Cole, a white man, indicates that McClain's mercurial management style was not directed at black employees alone.

■ In order to prove that the employer exercised greater strictness or arbitrariness in decisions affecting one group of employees than it used for other employees, a Title VII plaintiff may present evidence that other, similarly situated employees engaged in the same behavior that justified the plaintiff's discharge, but were not themselves discharged. Plaintiff in the case at hand attempts to demonstrate this sort of disparate treatment by bringing evidence of a white employee, Edward Oliver, who brought a gun to work but was not disciplined for doing so. Deposition of Edward Oliver, p. 36. Plaintiff claims that he was terminated for making threats while a white employee was not terminated for the same behavior; however, the incident with Edward Oliver is not relevant because it is not sufficiently similar to the reasons which Defendants offer to justify the termination of Plaintiff. Unlike Plaintiff, Oliver was not in a supervisory position. Plaintiff's alleged threats were not the sole reason given for his discharge, nor even apparently the main reason. The Separation Notice which McClain, Inc., issued to Plaintiff states that he was terminated because of "unsatisfactory work performance and related misconduct," particularly for "attempting to persuade employees that other supervisors were treating them unfairly" and for harming company morale. Plaintiff's Exhibit 12. Other testimony, cited above, refers to Plaintiff's failure to order parts correctly and other reasons. Plaintiff offers no evidence that Edward Oliver engaged in similar behavior without being fired or disciplined.

■ Plaintiff devotes a great deal of attention in his argument to evidence which might prove that he did not actually tell other employees they were targeted to be fired, or that he was not derelict at ordering parts, or that his comments about post office violence and guns in the workplace were not meant to be threatening. This evidence is relevant only to the extent that it might prove that the reasons were pretextual, and that McClain did not believe them to be true. "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir.1989). There is evidence that McClain believed his reasons to be true, not only in his own testimony, but also in the testimony of Neal Flowers, who reported the threats to McClain and received complaints from other employees that Plaintiff had told them they were going to be fired. NLRB Transcript, pp. 1023–1024. Further, there is testimony that Plaintiff did tell employees they were going to be fired (Testimony of Robert Fitzgerald, NLRB Transcript, p. 706), and that he did have trouble ordering parts (Oliver Dep., p. 31). Plaintiff presents no evidence which would show that McClain did not believe what he was told.

Finally, Plaintiff refers to the deposition of Elijah Shinholster and the affidavit of Wanda McDonald as direct evidence of McClain's racial attitudes. Shinholster testifies that whites at McClain could get loans from the management while blacks could not, and that he was laid off for two days while a white painter with less seniority was not laid off. McDonald testifies that it was "common knowledge" that Mr. McClain would not accept black secretaries in his office. It is not necessary for the Court to consider whether

these allegations, if true, would be enough to create an issue of fact as to discriminatory intent, because the evidence is not significantly probative. Shinholster's testimony is based on "gossip," and McDonald's testimony refers only to "common knowledge" and the hearsay statement of an unidentified representative of the Image Temporaries personnel company; neither shows any basis for personal knowledge of the situations. These two bits of testimony, of questionable value even if based upon personal experience, are not probative enough to create a genuine issue of material fact and require a trial.

 A party opposing summary judgment must produce evidence of such a quality that a reasonable jury could return a verdict for the non-moving party. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249–250, 106 S.Ct. at 2511. The evidence presented by Plaintiff in opposition to this motion, taken as a whole, is sufficient at most to raise a suspicion about the effectiveness of management at the McClain plant, but not enough to prove that the decision to discharge Aric Evans was motivated by racial discrimination. In order to make a case suitable for trial under Title VII or Section 1981, a claimant must offer more than just evidence of arbitrary or irrational decision-making; he must provide some evidence that race was the motivating factor for the decision. The Plaintiff has failed to do so in this case. Therefore, the Defendants' Motion for Summary Judgment is granted.

## IV. OVERTIME PAY

Plaintiff contends that he is owed overtime pay for the extra hours he worked in the months before his discharge. This claim is without merit, because at the time in question, Plaintiff was working in a supervisory role and was paid a salary, and was therefore ineligible for overtime pay. The Fair Labor Standards Act at 29 U.S.C. § 213(a) exempts an employer from the overtime pay requirements with respect to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 C.F.R. § 541.1(f) provides "that an employee who is compensated [on] a salary basis at a rate of not less than $250 per week, ... and whose primary duty consists of the management of the enterprise in which the employee is employed ... and includes the customary and regular discretion of the work of two or more other employees therein" meets the requirements of section 213(a) and is exempt from the overtime pay requirements. As has been explained above, the evidence presented upon the motion for summary judgment, including Plaintiff's own testimony, establishes that Plaintiff was working in an executive capacity during the period he was on salary. Therefore Plaintiff is not entitled to receive overtime pay, whether or not he would have made more money on an hourly wage than on salary, and accordingly summary judgment is also granted on the issue of overtime.