United States Court of Appeals,

Eleventh Circuit.

No. 96-9004.

Aric EVANS, Plaintiff-Appellant,

v.

McCLAIN OF GEORGIA, INC., McClain Industries, Inc., Defendants-Appellees.

Dec. 18, 1997.

Appeal from the United States District Court for the Middle District of Georgia. (No. 5:95-CV-112-1), Hugh Lawson, Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and LIMBAUGH[*], Senior District Judge.

PER CURIAM:

Plaintiff-Appellant Aric Evans ("Appellant") appeals from the district court's grant of summary judgment on his claims of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 (" § 1981") and for overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* For the reasons set forth, we reverse and remand.

*Facts and Procedural Background*

Defendants-Appellees McClain of Georgia, Inc. and McClain Industries, Inc. (collectively "Appellees") own and operate an industrial plant in Macon, Georgia, and fabricate there large steel trash bins and compactors. Prior to his discharge, Appellant had worked at Appellees' Macon plant for approximately eight years.

In July of 1994, the plant manager, Ken Graham, resigned. He was replaced on a temporary

---

[*]Honorable Stephen N. Limbaugh, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation

basis by the assistant plant manager, Al Buckalew. There appears to be no dispute that Appellant, in assisting Buckalew, was second in command. He contends that he was running the plant.

On October 3, 1994, Kenneth McClain, chairman of the board and president of McClain Industries, Inc., named Ken Cole as the new plant manager. Buckalew remained as an unofficial assistant plant manager and Appellant was, purportedly, next in line.

During this time there was an incident involving one of the leadmen at the plant, Tim Hall. Appellant contends that when Buckalew told Hall that Appellant was next in line to be the plant manager, Hall stormed out of the plant saying that he would not work for a "nigger." McClain, who was upset by the prospect of losing Hall, sent another employee to find him and, upon his return, allegedly promised Hall that he would be trained as the next plant manager at Appellees' Texas plant. After this incident, Appellant claims Hall was placed over him in the plant's managerial hierarchy.

Cole proved to be an incompetent manager and was terminated on November 22, 1994. He was replaced by Neal Flowers, a manager from one of Appellees' Oklahoma plants. Appellees claim Flowers was brought in to assist in the plant's conversion to a new product line.

Contemporaneous with all of these events was a campaign to organize a union at the plant. Whether or not Appellant was a management level employee, he was perceived by everyone as an integral part of the union's effort. In fact, Appellees' counsel, Thomas H. Williams, met with Appellant and informed him that he was not to engage in any further union activity because he was an assistant plant manager. Appellant denied his management status, noting that he was employed as an hourly wage earner.

Shortly thereafter, Appellant became a salaried employee. Although he admits being charged with supervisory responsibility, he contends that he was still treated as an hourly employee.

To support his position, Appellant claims that he was not included in the plant's management meetings, did not make work assignments, and still had to report at 6:00 am with the hourly employees. Appellant maintains that he was only given a salary to remove him from the bargaining unit in an attempt to thwart the union's organization effort.

On February 22, 1995, the day before the union election, McClain asked for Appellant's keys, told him that he was fired, and even accused Appellant of threatening to shoot someone at the plant. Appellees now contend, however, that Appellant was not actually fired until February 24, 1995, the day after the union election.

Appellees claim that McClain fired Appellant because he had become a disruptive force in the plant and was intentionally creating racial tensions among the lower level employees. They further contend that Appellant was negligent in performing his duties and had threatened certain white employees.

Appellant claims that after the incident with Tim Hall, McClain began to harass him in an attempt to force him to resign. He explains that McClain continually changed his job duties and reduced his responsibilities. He insists that he was denied promotions and ultimately terminated because of his race. He also maintains that he was wrongfully denied overtime compensation in violation of the FLSA.

The district court granted summary judgment against Appellant on both claims. *Evans v. McClain of Georgia, Inc.,* 934 F.Supp. 1383 (M.D.Ga.1996).

In concluding that Appellant could not establish a *prima facie* case of discriminatory failure to promote, the district court completely discounted the probative value of the incident involving Tim Hall. The court stated:

> Whether or not Tim Hall made the racially offensive statement attributed to him, nothing in the record suggests that Hall received a preferential promotion or that Hall was placed in a

position of greater responsibility or prestige than Plaintiff enjoyed. While the record fails to describe the nature of Hall's position or the scope of his authority, it does not suggest that he was in a position above the Plaintiff, but rather shows that Plaintiff and Hall each had responsibility for a separate phase of the plant's operations, and were assistant managers of approximately equal status.

*Evans,* 934 F.Supp. at 1388.

Although the district court concluded that Appellant could establish a *prima facie* case of discriminatory discharge, it held that he made no showing of pretext to overcome Appellees' legitimate, non-discriminatory reasons for his termination.

Finally, the district court concluded that Appellant was ineligible for overtime compensation under the FLSA because he was working in an executive capacity and was a salaried employee.

Appellant raises four points on appeal: 1) the district court erred in analyzing his discrimination claims under the standard announced in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because he presented direct evidence of discrimination; 2) the district court erred in concluding that his circumstantial evidence was insufficient as a matter of law on the issues of failure to promote and discriminatory discharge; 3) the district court erred in concluding that no reasonable trier of fact could conclude that he had established failure to promote and discriminatory discharge in light of the subsequent decision of the National Labor Relations Board ("NLRB") in a related case; and 4) the district court erred in concluding that he was exempt from the overtime requirements of the FLSA.

*Standard of Review*

This Court reviews *de novo* a district court's grant of summary judgment, applying the same legal standards that bound the district court, and viewing all facts and any reasonable inferences therefrom in the light most favorable to the non-moving party. *Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995); *McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1557 (11th Cir.1992).

Summary judgment is appropriate only when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

*Direct Evidence*

"When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available." *Trotter v. Board of Trustees of University of Alabama,* 91 F.3d 1449, 1453 (11th Cir.1996); *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir.), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). The basis for the analysis is that once a plaintiff produces direct evidence of a discriminatory motive, "the ultimate issue of discrimination is proved." *Bell,* 715 F.2d at 1556. As such, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989).

Appellant argues that McClain's statements, conduct, and attitudes are direct evidence of his discriminatory motive. *See EEOC v. Alton Packaging Corp.,* 901 F.2d 920 (11th Cir.1990) (general racially discriminatory remarks constitute direct evidence of decisionmakers' failure to promote black employees for discriminatory reasons). At his deposition, McClain testified that Appellant intimidated white employees by his "strut." He further testified that Appellant, "a very large, very strong, very muscular black man," was attempting to intimidate "three smaller or overweight white men."

These statements and others in Appellees' brief, however inappropriate they may be, are not direct evidence of a discriminatory motive with respect to Appellant's claims of failure to promote or discriminatory discharge. *See Burrell v. Board of Trustees of Georgia Military College,* 125 F.3d

1390, 1393 (11th Cir.1997)("Direct evidence is evidence, which if believed, proves [the] existence of fact in issue without inference or presumption.")(internal quotation omitted). At best, these statements merely suggest a discriminatory motive which, by definition, makes them circumstantial evidence.[1] *Id.* at 1393-94.

Similarly, the incident involving Tim Hall is not direct evidence of a discriminatory motive with respect to Appellant's claims of failure to promote or discriminatory discharge. As Hall was not a decisionmaker with respect to either of these employment decisions, his discriminatory comment cannot satisfy Appellant's burden in this regard. *See Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804-05 (O'Connor, J., concurring)("Thus, stray remarks in the workplace ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers...."); *Trotter,* 91 F.3d at 1453-54 (same). Moreover, assuming for the sake of argument that Hall's outburst resulted in his promotion and/or Appellant's demotion, there is no evidence which directly proves that McClain acted with a discriminatory motive. *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring)("What is required is ... direct evidence that *decisionmakers* placed substantial negative reliance on an illegitimate criterion in reaching their decision.")(emphasis added).

Appellant further argues that he presented undisputed evidence that McClain would talk to white employees but ignore black employees, that he laid off black employees with more experience than comparable white employees, that he promoted white employees with less seniority than comparable black employees and that he would give white employees privileges, such as loans, that were not given to black employees. Additionally, Appellant contends that one of the local

---

[1]Implicit in this finding is our conclusion that these comments are narrowly tailored to a specific event and, therefore, are distinguishable from the comments made in *Alton Packaging. See Burrell,* 125 F.3d at 1393, n. 7.

temporary agencies indicated that it would not send black applicants to the plant because McClain did not want black employees in office positions.

The district court correctly dismissed this evidence as "not significantly probative" because it was based on gossip, common knowledge, and the hearsay statement of an unidentified representative. There is no indication that any of this evidence can be reduced to admissible evidence at trial. *See Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1135 (11th Cir.)(inadmissible hearsay cannot defeat a motion for summary judgment when it is not reducible to admissible form at trial), *amended on reh'g,* 102 F.3d 1118 (11th Cir.1996).

Finally, Appellant argues that in the history of Appellees' operations (650 employees in eight plants), there have only been three black supervisory employees. Appellees argue, however, that Appellant has provided no other information (*i.e.,* whether any black employees ever applied for supervisory positions) to make this otherwise anecdotal information significant. *See e.g., Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 (11th Cir.1994)(" ... for this fact to be relevant, plaintiff would have had to present evidence as to how many blacks applied and were rejected and evidence of the success rate of equally qualified white applicants."). We agree. Statistics without an analytic foundation are "virtually meaningless." *Brown v. American Honda Motor Co.,* 939 F.2d 946, 952-53 (11th Cir.), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992).

Accordingly, the district court appropriately analyzed Appellant's discrimination claims under the *McDonnell Douglas* standard.

### *The McDonnell Douglas Standard*

Under the *McDonnell Douglas* standard, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253-54 & n. 6, 101 S.Ct. 1089, 1094

& n. 6, 67 L.Ed.2d 207; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3171 (U.S. July 28, 1997)(No. 97-361). If the plaintiff successfully establishes a *prima facie* case, a legal presumption of unlawful discrimination arises and the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Combs,* 106 F.3d at 1528. "To satisfy that burden of production, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.' " *Combs,* 106 F.3d at 1528 (*quoting Burdine,* 450 U.S. at 254-55, 101 S.C.t at 1094).

If the employer meets this burden of production, "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *see also Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1095 & n. 10. Still, the elements of the *prima facie* case remain. *Combs,* 106 F.3d at 1528. Moreover, when accompanied by evidence of pretext or disbelief of the defendant's proffered explanation, in some instances, they may permit a finding for the plaintiff. *Id.* at 1529; *see also Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749. The plaintiff employee, however, always retains the ultimate burden of proving that he was the victim of intentional discrimination. *Hicks,* 509 U.S. at 508, 113 S.Ct. at 2747-48; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093-94.

*Discussion*

A. Failure to Promote

A *prima facie* case of discriminatory failure to promote requires the plaintiff to show that

he is a member of a protected class; he was qualified for and applied for the promotion; he was rejected; and other equally or less qualified employees who were not members of the protected class were promoted. *Combs,* 106 F.3d at 1539 n. 11.

The district court concluded that Appellant could not establish a *prima facie* case of discriminatory failure to promote because the record did not indicate that he was actually denied a promotion. *Evans,* 934 F.Supp. at 1388 ("The record shows that Plaintiff was given a salary and the title of assistant manager or stock manager, and, despite his argument that the promotion was in name only, the Plaintiff's own deposition states that in the shakeup after the firing of Ken Cole, Plaintiff acquired new managerial responsibilities beyond those of his previous job."). The district court also concluded that nothing in the record suggested that Tim Hall "received a preferential promotion or that [he] was placed in a position of greater responsibility or prestige than [Appellant] enjoyed." *Id.* Accordingly, the district court granted summary judgment in favor of Appellees.

Our review of the record, however, reveals additional facts concerning the Appellant's lack of promotion. Three of Appellant's nephews, who also worked at the plant, testified that McClain held a meeting with certain employees shortly after the incident involving Hall occurred. All three testified that McClain announced that he was putting Hall over Appellant. They further testified that McClain proceeded to tell an off-color joke in which he compared certain employees at the plant to various body parts, concluding with Appellant being compared to an anus.

Additionally, Appellant testified that in the months following the incident involving Hall, his job assignments changed almost weekly. He contends that he was frequently given demeaning and menial tasks. *See e.g., McCabe v. Sharrett,* 12 F.3d 1558, 1564 (11th Cir.1994)(employee who was given fewer responsibilities and was made to perform more menial tasks suffered adverse employment action).

Finally, Appellant maintains that he was only given a salary to remove him from the bargaining unit in an attempt to thwart the union's organization effort. The evidence on this point is at best inconclusive. Certainly the discrepancies between Appellants assignments and those of the other managers, as well as the delayed manner in which he became a salaried employee, could support such a finding.

Accordingly, we conclude that Appellant met his preliminary burden of establishing a *prima facie* case of discriminatory failure to promote. As this was the sole basis for the district court's grant of summary judgment, its decision must be reversed.[2]

B. Discriminatory Discharge

A *prima facie* case of discriminatory discharge requires a plaintiff to show that he was a member of a protected class; he was qualified for the job; he was terminated despite his qualifications; and after his termination the position remained open and the employer continued to seek applicants of similar qualifications. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1375 (11th Cir.1996).

---

[2]Although the district court chose not to address the issue of whether Appellant's Complaint properly asserted a claim of discriminatory failure to promote, we will consider it because it was properly raised by the parties and it involves a pure question of law. *See Narey v. Dean,* 32 F.3d 1521, 1526 (11th Cir.1994).

> The Federal Rules of Civil Procedure require only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food & Comm'l Workers Int'l Union,* 866 F.2d 1380, 1384 (11th Cir.1989); *see also Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 604 (5th Cir.1981)("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."). We conclude that Appellant's Complaint satisfies these liberal standards.

There is no dispute that Appellant established a *prima facie* case of discriminatory discharge. Accordingly, the district court considered Appellees' legitimate, nondiscriminatory reasons. It found several, including that Appellant was fired for "intimidating employees, telling employees they were targeted to be fired, failing to order parts on time, insubordination, and making threats." *Evans,* 934 F.Supp. at 1389. The district court properly determined that Appellees met their burden of production.

The district court then looked to the issue of pretext. It concluded that although there may have been some dispute as to the credibility of Appellees' legitimate, nondiscriminatory reasons, Appellant could not prevail unless the evidence presented also indicated that intentional race discrimination was the true reason for his discharge. *Evans,* 934 F.Supp. at 1389 (*citing Hicks,* 509 U.S. at 515, 113 S.Ct. at 2751-52).

In this respect, the district court was in error. Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons. *Combs,* 106 F.3d at 1530-32; *Howard,* 32 F.3d at 527-28; *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir.1993).

On our review it appears that Appellant presented sufficient evidence to create a genuine issue of material fact with respect to the truth or falsity of each of Appellees' legitimate, nondiscriminatory reasons. Accepting Appellant's version of the facts as true, we must conclude that he was fired on February 22, 1995. The record indicates that, as of that date, McClain had not yet been informed by anyone that Appellant was attempting to stir up racial tensions at the plant. Nor is there any indication that Appellant had been negligent or insubordinate in performing his duties.

On the contrary, it appears that Appellant was a capable employee who was frequently relied upon to assist in the day to day operations of the plant. Appellees' *ad hoc* explanations and arguments regarding Appellant's actual date of termination are simply insufficient at this stage of the proceedings.

Appellees' assertions concerning Appellant's "veiled threats" are similarly insufficient. Even the district court recognized that these "were subject to question by a trier of fact." *Evans,* 934 F.Supp. at 1389.

Accordingly, the district court's grant of summary judgment on Appellant's claim of discriminatory discharge must be reversed.[3]

*Overtime Compensation*

The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity" who receives payment on a salary basis. 29 U.S.C. § 213(a)(1)(1994); *see also Avery v. City of Talladega,* 24 F.3d 1337, 1340 (11th Cir.1994). Exemptions under the FLSA, however, are to be construed narrowly. *Nicholson v. World Business Network, Inc.,* 105 F.3d 1361, 1364 (11th Cir.), *cert. denied,* S.Ct. (1997). Indeed, the employer has the burden of showing that it is entitled to the exemption. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir.1995).

The district court concluded that Appellant was exempt from the overtime compensation requirements of the FLSA because he was working in an executive capacity and was paid an annual salary of $35,000.00. *Evans,* 934 F.Supp. at 1391 ("29 C.F.R. § 541.1(f) provides "that an employee

---

[3]In light of this conclusion, we deem it unnecessary to consider whether, and to what extent, the factual findings and credibility determinations of the NLRB in subsequent and collateral proceeding bind a district court on a motion for reconsideration of its grant of summary judgment.

who is compensated [on] a salary basis at a rate of not less than $250 per week, ... and whose primary duty consists of the management of the enterprise in which the employee is employed ... and includes the customary and regular discretion of the work of two or more other employees therein' meets the requirements of section 213(a) and is exempt from the overtime pay requirements."). Accordingly, the district court granted summary judgment on Appellant's claim for overtime compensation for the months immediately preceding his discharge.

Appellant argues that the district court erred in considering him a salaried employee because he was only given a salary in an attempt to "obviate the requirements of the National Labor Relations Act." He further contends that he was not endowed with managerial responsibility because he could not hire, fire, promote, suspend, reward, or even grant time off for other employees.

We do not believe that an employer's subjective motivations are relevant to the inquiry of whether or not an employee was compensated on a salary basis. The regulations speak in purely objective terms. 29 U.S.C. § 213(f)("The term "employee employed in a bona fide executive * * * capacity' in section 13(a)(1) of the act shall mean any employee: ... [w]ho is compensated for his services on a *salary basis* ....")(emphasis added). Nevertheless, we conclude that the district court's grant of summary judgment on Appellant's claim for overtime compensation under the FLSA was erroneous. It is not at all clear from the record whether Appellant actually acted in a bona fide executive, administrative, or professional capacity in the months immediately preceding his discharge.

### Conclusion

For the reasons stated in this opinion, we reverse the district court's grant of summary judgment on Appellant's claims of race discrimination and for overtime compensation and remand to the district court for further proceedings.

REVERSED and REMANDED.

LIMBAUGH, Senior District Judge, concurring:

I concur with both the analysis and the result in this case under established Eleventh Circuit precedent. As the presiding district judge in the bench trial of the *Hicks* case, however, I feel compelled to write separately, and respectfully, to note my disagreement with the rule of law propounded in *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir.1997).

In *Hicks* the Supreme Court unequivocally stated, "[e]ven though (as we say here) rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*" *Hicks,* 509 U.S. at 511 n. 4, 113 S.Ct. at 2749 n. 4 (emphasis in original). The Court explicitly recognized that "trial courts or reviewing courts should [not] treat discrimination differently from any other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern the basic allocation of burdens and order of presentation of proof in deciding this ultimate question." *Id.,* at 524, 113 S.Ct. at 2756 (*quoting Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)) (internal quotations and citation omitted). Simply put, the *McDonnell Douglas* burden shifting framework "is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination," *Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8, not to raise the bar for defendant employers in the traditional application of Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) (the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (same). In employment discrimination cases, "the ultimate question is discrimination *vel non.*" *Hicks,* 509 U.S. at 518, 113

S.Ct. at 2753 (*quoting Aikens,* 460 U.S. at 714, 103 S.Ct. at 1481).

A more than plausible reading of the facts of this case amply demonstrates the problem with the analysis offered in *Combs.* Assume Appellant establishes a *prima facie* case of discriminatory discharge. Assume further that Appellees advance several legitimate, nondiscriminatory reasons for the employer's actions, *i.e.,* Appellant had become a disruptive force in the plant by intentionally creating racial tensions among the lower level employees, negligently performing his duties, and threatening certain white employees. Finally, assume Appellant presents evidence sufficient to create a genuine issue of material fact as to the truth or falsity of Appellees' legitimate, nondiscriminatory reasons. Under the existing rule of law in this Circuit, Appellant can survive a motion for summary judgment or for judgment as a matter of law.

Suppose, however, that there is virtually no evidence indicating that Appellant's discharge was motivated by his race. On the contrary, suppose the evidence overwhelmingly suggests that Appellant was discharged for his participation in a union organization effort at the plant. While this motivation is clearly unlawful under the National Labor Relations Act, *see McClain of Georgia, Inc.,* 322 N.L.R.B. 367 (1996), it in no way violates Title VII or § 1981. *See* 42 U.S.C.2000e-2(a); 42 U.S.C.1981(a); *see also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 608-14, 113 S.Ct. 1701, 1705-08, 123 L.Ed.2d 338 (1993) (employer does not violate the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* by terminating older employees in order to prevent their pension benefits from vesting, even though engaging in such action is unlawful under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*). Absent some evidence indicating that the employer was motivated by a discriminatory animus, "[w]e have no authority to impose liability ... for alleged discriminatory employment practices." *Hicks,* 509 U.S. at 514, 113 S.Ct. at 2751. Accordingly, judgment as a matter of law must be granted in favor of the employer.

For these reasons and for the reasons mentioned therein, I find the analysis offered in *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 440-44 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997), to be a more persuasive and accurate reading of *Hicks.* *See also Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 335 (1st Cir.1997) ("In the context of a summary judgment proceeding, *Hicks* requires that once the employer has advanced a legitimate nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him ... was wrongfully based on [an illegitimate criterion].") (internal quotation omitted); *Fisher v. Vassar College,* 114 F.3d 1332, 1340 (2d Cir.1997) (en banc) ("a prima facie case meeting the minimal standard of *McDonnell Douglas* (even where elements are acknowledged by the defendant), together with a finding of pretext, do not necessarily add up to a sustainable case of discrimination"), *petition for cert. filed,* 66 U.S.L.W. 3178 (U.S. Sept. 2, 1997) (No. 97-404); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc) ("The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory."); *Ryther v. KARE 11,* 108 F.3d 832, 848 (8th Cir.) (Loken, J., in a partial separate concurrence commanding a majority of the Eighth Circuit en banc), *cert denied,* --- U.S. ----, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997) ("[a] district court may grant summary judgment or JAML for the employer, even if plaintiff has some evidence of pretext if that evidence, for one reason or another, falls short of proving intentional discrimination.").