**Terry S. O'NEAL, Plaintiff,**

v.

**ATLANTA GAS AND LIGHT CO., Defendant.**

**Civil Action No. CV296–97.**

United States District Court,
S.D. Georgia,
Brunswick Division.

March 13, 1997.

Edward E. Boshears, Randall M. Clark, Brunswick, GA, for Plaintiff.

Terry Lee Readdick, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, J. Lewis Sapp, Kelly Michael Hundley, Elarbee, Thompson & Trapnell, Atlanta, GA, for Defendant.

## ORDER

ALAIMO, District Judge.

Plaintiff, Terry S. O'Neal ("O'Neal"), brings this suit against Defendant, Atlanta Gas and Light Co. ("AGL"), under the Americans with Disabilities Act of 1 990, 42 U.S.C. § 12101 *et seq.* ("ADA"). O'Neal alleges that AGL terminated him because of his emotional disability, which he characterizes as a "nerve problem" or "stress disorder." AGL filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which will be GRANTED for the reasons set forth below.

### FACTS

O'Neal was employed by AGL for approximately five years as a service technician,[1] prior to his termination on October 19, 1993. As a service technician, O'Neal was responsible for repairing gas lines and meters, installing gas appliances, and turning gas service on and off for customers. In addition to working during regular business hours, O'Neal worked "on call" duty, which required him to respond to service calls occurring after regular business hours.

During a two year period, from 1991 to 1992, O'Neal was involved in divorce proceedings. Also, during that time period, O'Neal was promoted to a Class A service technician after he successfully completed a two week training school and passed an exam.[2] Due to what O'Neal characterizes as "pressure" attributable to his divorce and promotion, he began to experience some problems, including an inability to sleep and weight loss. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 2.)

In late 1992 or early 1993, O'Neal sought treatment from the Employee Assistance Program ("EAP"), which is a confidential program ran by AGL to help employees with emotional, stress, alcohol abuse, or other similar problems. O'Neal met two or three times with a psychiatrist, Dr. Jim Lanier, to whom the EAP referred O'Neal. Mark Warren ("Warren"), an operations supervisor at AGL, made arrangements on at least two occasions to ensure that O'Neal was able to keep his EAP appointment. (Warren Dep. at 18–19.) O'Neal, however, did not believe that seeing Dr. Lanier was beneficial to him, so O'Neal discontinued treatment. (O'Neal Dep. at 56.)

Several months later, on September 21, 1993, O'Neal sought treatment from a medical doctor, Dr. Grubb, for his inability to sleep. Dr. Grubb prescribed Desyrel, but O'Neal did not want to take any drugs. Dr. Grubb also made various other suggestions that might help O'Neal to sleep, including reading a boring article, engaging in sex, or drinking one beer before bedtime. (O'Neal Dep. at 31.)

On October 18, 1993, O'Neal was "on call." Prior to going to bed, O'Neal drank a twelve ounce beer. Shortly after O'Neal went to bed, he received a service call at approximately 8:00 P.M. to repair a gas line that had been cut. O'Neal responded to the service call, and he was the first AGL employee to arrive at the scene. O'Neal proceeded to repair the gas line, during which time Warren also arrived at the scene. When Warren smelled alcohol about O'Neal, he called O'Neal's immediate supervisor, Wesley Flynt ("Flynt"), who reported to the scene. (Warren Dep. at 23, 26.) Flynt confirmed the odor of alcohol. (Flynt Dep. at 12.) Warren then proceeded to place telephone calls to various management personnel to receive guidance on how to handle the situation, and he was instructed by H.P. Weldon, Vice President and Southeast Georgia Division Manager, to arrange for a blood alcohol test. (Warren Dep. at 26–27.)

A blood alcohol test was performed at the local hospital at approximately 10:10 P.M. The test showed a blood alcohol reading of 29 MG/DL, which confirmed the presence of alcohol.[3] (Pl.'s Br. in Opp'n to Mot. for Summ. J. Ex. A.) O'Neal was suspended upon receipt of the test results, pursuant to

---

1. O'Neal also was employed as a meter reader prior to being promoted to the service technician position.

2. O'Neal was a Class B and Class C service technician prior to being promoted to Class A.

3. Readings of 100 MG/DL or greater generally indicate intoxication.

AGL's "zero tolerance" Policy on Alcohol and Drugs. (See *id.* Ex. B.)

The next morning, at approximately 7:15 A.M., Weldon instructed Warren to terminate O'Neal after Weldon learned of the results of O'Neal's blood alcohol test. (Warren Dep. at 34–35.) Before O'Neal was informed of his termination, he met with Terry Lawson ("Lawson"), the local service center manager who was Warren's immediate supervisor, at approximately 8:30 A.M. O'Neal explained to Lawson that he had been experiencing problems sleeping, and that Dr. Grubb had told him to consume one alcoholic drink before bedtime. (O'Neal Dep. at 29.) In accordance with Lawson's request, O'Neal obtained a written note from Dr. Grubb, which states "I have seen Terry O'Neal ... most recently for insomnia for which I recommended several things among which was ... a drink of alcohol." (Pl.'s Br. In Opp'n to Mot. for Summ. J. Ex. C.) O'Neal gave the note from Dr. Grubb to Lawson.

At approximately 1:00 P.M. on October 19, 1993, Lawson informed O'Neal of the decision to terminate him. The next day, O'Neal met with Weldon in an attempt to be reinstated, but he was unsuccessful in his efforts.

O'Neal timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been discriminated against because of his alleged disability. Upon receipt of a right-to-sue letter from the EEOC, O'Neal filed the instant action.

## DISCUSSION

### I. Summary Judgment

AGL has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir.1996).

### II. ADA Prima Facie Case

The ADA was enacted to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1) (1994). It provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... [the] discharge of employees. and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

■ To establish a *prima facie* case under the ADA, a plaintiff must show that (1) he has a disability, (2) he is a qualified individual, and (3) he was discriminated against because of the disability. *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996), *amended on reh'g in part* 102 F.3d 1118 (1996) (portion of last paragraph of opinion amended with no substantive changes). In addition, a plaintiff must show that the employer had either actual or constructive knowledge of the disability. *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 910 (11th Cir.1996).

O'Neal characterizes his alleged disability

as a mental "nerve" problem[4], which is accompanied by various symptoms including depression, the inability to sleep, fatigue, and weight loss. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 7.) AGL contends that O'Neal's alleged stress disorder is not a disability as a matter of law. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 13.)

The ADA defines disability, *inter alia,* as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual. . . ." 42 U.S.C. § 12102(2)(A). In essence, the definition of disability is itself a compilation of other definitions.

### A. Physical or Mental Impairment

Physical or mental impairments include any mental or psychological disorder, such as emotional or mental illness. 29 C.F.R. § 1 630.2(h)(2) (1996).[5] Depression certainly seems to fit within the definition of an impairment. *See Olson v. General Elec. Astrospace,* 101 F.3d 947, 953 (3d Cir.1996); *Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment Practices,* 95 F.3d 1102, 1108 (Fed.Cir.1996). O'Neal, however, never was diagnosed as suffering from depression. (O'Neal Dep. at 71.) In fact, the only evidence that O'Neal has presented are his own assertions that he suffered from a mental disorder. O'Neal did present evidence from a medical doctor that he suffered from an inability to sleep, which he claims is a symptom of his "nerve" problem. Despite the lack of expert testimony, the Court will give the benefit of the doubt to O'Neal, and assumes that he suffered from a physical or mental impairment.

"A physical [or mental] impairment, standing alone, however, is not necessarily a disability as contemplated by ADA." *Gordon,* 100 F.3d at 911. The impairment must substantially limit a major life activity before it properly is classified as a disability. 42 U.S.C. § 12102(2)(A).

### B. Substantial Limitation of Major Life Activity

■ The next inquiry, thus, is whether O'Neal's impairment "substantially limits" a "major life activity." Major life activities are those activities that the average person in the general population can perform with little or no difficulty. 29 C.F.R. Pt. 1630, Interpretative Guidance on Title I of the Americans with Disabilities Act, App. 339 (1996). Major life activities may include functions such as caring for oneself, walking, seeing, hearing, learning, and breathing. 29 C.F.R. § 1630.2(*l*). The EEOC interpretative guidelines, however, state that the list of major life activities given in the federal regulations should not be considered exhaustive, and then cite other examples of major life activities such as sitting, standing, lifting, and reaching. 29 C.F.R. Pt. 1630, App. 339.

O'Neal fails to state succinctly which life activity or activities he claims were substantially limited. O'Neal admits in his deposition that at the time of his termination, he was able to walk, talk, hear, speak, see, taste, jump, bend, stoop, squat, kneel, crawl on his hands and knees, dig, cook his meals, dress himself, bathe, and concentrate on and understand what was going on around him. (O'Neal Dep. at 50–52.) O'Neal never alleges that he was unable to care for himself nor that he was unable to perform any physical task. O'Neal apparently alleges that his ability to work was substantially limited.

If an individual is not substantially limited in any other life activity, then a determination is made whether the individual is substantially limited in working. 29 C.F.R. Pt. 1630, App. 340. In order for an impairment to limit substantially the ability to work, it must restrict significantly the ability of an individual to perform either a class of jobs or a broad range of jobs in various classes, as compared to the average person having comparable training, skills, and abilities. 29 C.F.R. § 1630.2(j)(3)(*l*). For example, an individual who has a back condition that pre-

---

4. O'Neal also refers to his alleged disability as a "stress disorder." (Compl.¶ 7.)

5. The Court properly may rely upon the regulations promulgated by the EEOC for guidance to interpret the ADA. *Gordon,* 100 F.3d at 911; *see* 42 U.S.C. § 12116 (requiring EEOC to implement regulations to implement Title I of the ADA).

vents him from performing any heavy labor job is substantially limited in the major life activity of working because the impairment eliminates his ability to perform a class of jobs, notwithstanding his ability to perform jobs in another class, such as semi-skilled labor. 29 C.F.R. Pt. 1630, App. 340. However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(*l* ).

■ The determination whether O'Neal was substantially limited in his ability to work must be assessed as of the time that he was discharged. *See Pritchard,* 92 F.3d at 1133–34 (holding that a jury must consider whether the plaintiff was disabled *at the time of her termination).* O'Neal concedes that he physically was able to work as a service technician at the time of his termination. (O'Neal Dep. at 52.) Apparently, the only difficulty O'Neal experienced with his job was working the "on call" shifts. (*See id.* at 106 (stating that removal of his name from the "on call" list would have accommodated his disability).) O'Neal, however, admits that he volunteered to be on call as much as possible, with the result that there were several occasions when he was on call for several consecutive weeks. (*Id.* at 10–11.) The Court is convinced that O'Neal also was mentally able to perform his job duties, as evidenced by his good attendance record and willingness to volunteer for on call shifts. O'Neal has failed to demonstrate how, if at all, his "nerve" problem impacted his ability to work.

In addition, O'Neal argues that the symptoms he suffered in association with his "stress disorder," such as weight loss and the inability to sleep, substantially limited his ability to work. (*See* Pl.'s Br. in Opp'n to Mot. for Summ. J. at 8.) However, the Court is again at a loss as to how those symptoms affected O'Neal's ability to work. Moreover, O'Neal's reliance on *Pritchard* is misplaced. In that case, Pritchard was an electrical engineer who suffered from depression that was exacerbated by the stress involved with working on nuclear projects. Pritchard, however, was able to work as an engineer in non-nuclear fields. The Eleventh Circuit

held that Pritchard's depression, by itself, was not an impairment. *Pritchard,* 92 F.3d at 1133. The Eleventh Circuit also held that a genuine issue of material fact existed whether the symptoms that Pritchard suffered, which included fatigue, difficulty sleeping, difficulty concentrating, and experiencing suicidal thoughts, substantially limited a major life activity. *Id.* O'Neal argues that his symptoms are "virtually identical" to those of Pritchard and, thus, a question of fact exists whether he is disabled under the ADA. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 8.) A critical difference between *Pritchard* and the instant case, however, is that Pritchard presented evidence explaining how her symptoms impacted her ability to function. Conversely, in the case at bar, O'Neal admits that he was able to continue working as a service technician and, further, that his ability to perform a myriad of other major life activities was not affected.

■ Even assuming that O'Neal's stress disorder impacted his ability to work, the Court is not convinced that he was *substantially limited* in working. O'Neal was not prevented from performing a class of jobs, as shown by his own admission. O'Neal has worked in various positions since his termination from AGL, including a wrecker driver, construction worker, pipe fitter, and ship supervisor. O'Neal has not pointed to any class of jobs that his impairment has restricted his ability to perform. Furthermore, O'Neal maintains that he was able to continue working as a service technician at the time of his termination. As already discussed, the only difficulty O'Neal apparently experienced with his job was working the "on call" duty. "[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir.1995).

While O'Neal undeniably felt stress as a result of his divorce and promotion, the fact is that many employees feel stress from their jobs and personal lives. While some stress disorders may rise to the level of a disability, the Court is not convinced that the stress suffered by O'Neal is such a case. If the

Court were to hold that a complaint such as O'Neal's was actionable, it would expand the scope of the ADA well beyond the scope of disabilities that Congress intended to cover under the Act. *Dewitt v. Carsten*, 941 F.Supp. 1232, 1235 (N.D.Ga.1996).

Accordingly, the Court concludes that O'Neal does not have a disability under the ADA, and is unable to establish his *prima facie* case. The Court, therefore, will grant AGL's Motion for Summary Judgment.

### CONCLUSION

The Court has considered both parties' positions and arguments carefully. AGL's Motion for Summary Judgment is **GRANTED.**