Inez FRAZIER, Plaintiff,

v.

William E. SMITH, Sheriff, Camden County, Individually and in his Official Capacity as Sheriff; Charlie Easterling, Individually and in his Official Capacity as Chief Deputy Sheriff; and Camden County Board of Commissioners, Defendants.

No. CIV.A. CV297–136.

United States District Court,
S.D. Georgia,
Brunswick Division.

June 26, 1998.

David R. Osborne, Brunswick, Christian J. Steinmetz, III, Clark & Clark, Savannah, GA, for Plaintiff.

Terry Lee Readdick, G. Todd Carter, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, for Defendants.

## ORDER

ALAIMO, District Judge.

Plaintiff, Inez Frazier ("Frazier"), alleges racial discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.* (1994), discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12112 *et seq.* (1995), and intentional infliction of emotional distress in violation of Georgia law. Currently before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiff's request for oral argument. For the reasons set forth below, Defendants' Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART. Plaintiff's request for oral argument will be DENIED.

## FACTS

Ms. Frazier is a black female, who worked for the Camden County Sheriff's Department (the "Department") from 1984 until she was terminated on August 1, 1995. Sheriff Smith, one of the named Defendants, was Camden County Sheriff throughout Plaintiff's employment. During her tenure, Plaintiff rose from the position of radio dispatcher to that of jail administrator. She was promoted to the rank of captain and the position of jail administrator in January 1993. As jail administrator, she was responsible for the operation of the Camden County jail and answered either to Sheriff Smith or Charlie Easterling ("Easterling"), Chief Deputy Sheriff.

Plaintiff alleges that Easterling, a white man, used racial slurs in the workplace to refer to her and others. Plaintiff contends that Easterling called some people "niggers." She claims that this practice undermined her authority within the jail and created a hostile work environment. Plaintiff complained of Easterling's behavior to Sheriff Smith, as well as to other employees.

Plaintiff also contends that she was discriminated against on the basis of her disability, namely, carpal tunnel syndrome. This condition made it impossible for her to perform some of her job duties. She requested certain accommodations for her condition, but the Department did not comply with her requests. As a result, on July 24, 1995, she was placed on temporary medical leave.

On July 25, 1995, an inmate at the Camden County jail escaped. After the escape, Sheriff Smith ordered an investigation. After consulting with Easterling about Plaintiff, Sheriff Smith terminated Ms. Frazier on August 1, 1995. Two other employees were given the option of resigning or facing termination in connection with the escape. Sheriff Smith contends that Plaintiff's termination was based upon the escape and other complaints he had received about Plaintiff's performance. James Proctor ("Proctor"), a white male who is a Camden County Commissioner, succeeded Plaintiff as jail administrator.

## DISCUSSION

### I. *Summary Judgment*

Defendants have moved for summary judgment raising a plethora of arguments. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion only must make this showing after the moving party has satisfied

its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The Court should consider the pleadings, depositions, and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). However, to survive summary judgment, the plaintiff must present more than a mere "scintilla of evidence." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id. See also Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir.1996).

## II. *Title VII*

### A. **Personal Staff Exception**

Defendants argue that Plaintiff is not an employee protected by Title VII. (Defs.' Br. Supp. Summ. J. at 5). Specifically, Defendants contend that Plaintiff was a member of Sheriff Smith's personal staff and is excluded from the coverage of Title VII. (*Id.* at 6–7). Plaintiff claims that she was not a member of the Sheriff's personal staff and should be allowed to proceed with her Title VII claim. (Pl.'s Br. Opposing Summ. J. at 7).

█ In order for an individual to have a cognizable claim under Title VII, the person must be an employee, as defined in 42 U.S.C.A. § 2000e(f) (1994).

> The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C.A. § 2000e(f). The determination of whether an individual should be considered an employee under Title VII is governed by federal law. *EEOC v. Reno,* 758 F.2d 581, 584 (11th Cir.1985); *Calderon v.*

*Martin County,* 639 F.2d 271, 272–73 (5th Cir. Unit B Mar. 13, 1981).[1]

█ Within the definition of "employee," Congress has provided an exception for the personal staff of qualified elected officials. This exception should be construed narrowly. *EEOC v. Reno,* 758 F.2d at 584; *Wall v. Coleman,* 393 F.Supp. 826, 828 (S.D.Ga.1975). The entire staff of an elected official is not considered "personal staff," or else the word "personal" would have no meaning. *Cromer v. Brown,* 88 F.3d 1315, 1322 (4th Cir.1996). In fact, the term "personal staff" "... embodies the general and traditional proposition that positions of confidentiality, policy-making or acting and speaking on behalf of the chief are truly different from other kinds of employment." *Shahar v. Bowers,* 114 F.3d 1097, 1104 n. 15 (11th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998). Personal staff includes only those staff members in highly intimate or sensitive positions of responsibility. *Cromer,* 88 F.3d at 1322; *Montgomery v. Brookshire,* 34 F.3d 291, 295 (5th Cir.1994). In this case, all parties agree that Sheriff Smith is an elected official and that Plaintiff was on his staff. The question remains, however, whether Plaintiff, a jail administrator, should be considered a member of his personal staff.

█ The Eleventh Circuit never has addressed whether the members of a sheriff's staff are considered the personal staff of an elected official. In the context of elected state attorneys, the Eleventh Circuit consistently has found that assistant state attorneys should be considered the personal staff of the elected attorney for purposes of Title VII. *Shahar,* 114 F.3d at 1104 n. 15; *EEOC v. Reno,* 758 F.2d at 584; *Wall,* 393 F.Supp. at 828. However, this conclusion is based on the facts that the assistant state attorneys possess the same powers and responsibilities as the state attorney, serve at the pleasure of the state attorney, and are responsible for making policy. *Shahar,* 114 F.3d at 1104 n. 15; *EEOC v. Reno,* 758 F.2d at 584.

---

**1.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions

of the former Fifth Circuit rendered prior to October 1, 1981.

Other courts that have addressed the issue of whether deputy sheriffs are exempt under Title VII have declined to adopt a *per se* rule regarding their status. *See Calderon,* 639 F.2d at 273; *Cromer,* 88 F.3d at 1322; *Montgomery,* 34 F.3d at 296; *United States v. Gregory,* 818 F.2d 1114, 1117 (4th Cir.1987); *Curl v. Reavis,* 740 F.2d 1323, 1328 (4th Cir.1984); *Owens v. Rush,* 654 F.2d 1370, 1376 (10th Cir.1981). Instead, courts have relied on an analysis of the particular facts of each case in light of certain factors, including: (1) the sheriff's authority to hire, promote and terminate the employee, (2) the employee's level within the chain of command, (3) the presence of an intimate working relationship between the employee and the sheriff, (4) the involvement of the employee in policy-making decisions, (5) whether the employee worked in the sheriff's campaign, and (6) whether the sheriff directly supervises the employee.[2] *Cromer,* 88 F.3d at 1322; *Gregory,* 818 F.2d at 1117; *Curl,* 740 F.2d at 1328; *Owens,* 654 F.2d at 1376. Since this determination demands extensive factual analysis, summary judgment rarely is appropriate on this exemption. *Calderon,* 639 F.2d at 273; *Montgomery,* 34 F.3d at 295; *Dubisar–Dewberry v. District Attorney's Office of Twelfth Judicial Circuit,* 927 F.Supp. 1479, 1483 (M.D.Ala.1996).

The Fourth Circuit's decision in *Cromer* illustrates the detailed factual analysis that is required. In *Cromer,* the court was faced with the issue of whether an employee of the sheriff's department was a member of the sheriff's personal staff and not covered by Title VII. 88 F.3d at 1322. The court concluded that the employee was not a member of the sheriff's personal staff when he was a lieutenant, but when the employee became a captain, he became a personal staff member. *Cromer,* 88 F.3d at 1323–24. When the plaintiff was a lieutenant, he was fourth in command at the sheriff's office and reported to his immediate supervisor, but not to the sheriff directly. *Cromer,* 88 F.3d at 1323–24.

During that time, he only saw the sheriff in monthly meetings and was not involved in policy-making decisions. *Cromer,* 88 F.3d at 1324. However, when the plaintiff was promoted to a captain, the court found that he was a personal staff member, regardless of the fact that he had not been hired by the sheriff, nor served on his campaign. *Cromer,* 88 F.3d at 1324. As a captain, the plaintiff participated in weekly meetings to establish policy, interacted with the sheriff on a daily basis, and publically spoke on behalf of the sheriff when the sheriff was unavailable. *Cromer,* 88 F.3d at 1324.

Construing the facts in the light most favorable to Plaintiff, the facts present a situation similar to when the plaintiff in *Cromer* was a lieutenant. Indeed, Sheriff Smith possesses the authority to hire, promote and terminate Plaintiff. (Smith Dep. at 47, 67; Smith Aff. ¶¶ 6–8). However, this fact alone is insufficient for the Court to conclude that Frazier was a member of his personal staff. Plaintiff was third in command at the Camden County jail. (Frazier Dep. at 66; Smith Dep. at 12). The lower an individual is in the chain of command, the less likely that this exemption will apply. *Montgomery,* 34 F.3d at 296 (explaining that "the exemption was primarily intended to exempt the elected official's immediate subordinates or those who are his first line advisors.") (quoting 118 Cong. Rec. 4492 (1972)) (internal quotes omitted). Additionally, Plaintiff often would not report to Sheriff Smith, but, instead, to Easterling, who was second in command. (Smith Dep. at 13). *See Curl,* 740 F.2d at 1328 (holding that a deputy sheriff who was not under the direct command of the sheriff was not exempt under Title VII).

· Defendants do not claim that she possessed an intimate working relationship with Sheriff Smith, nor that she was involved with any policy-making decisions. In fact, Sheriff Smith states in his affidavit that "[a]s jail

---

2. In instances not involving deputies, courts have considered similar factors, including: (1) whether the elected official has plenary powers of appointment and removal, (2) whether the employee only is accountable to the elected official, (3) whether the employee represents the elected official in public, (4) the employee's level within the chain of command, and (5) whether an actual

intimate working relationship exists between the elected official and the employee. *Montgomery,* 34 F.3d at 295; *Teneyuca v. Bexar County,* 767 F.2d 148, 151 (5th Cir.1985); *Dubisar–Dewberry v. District Attorney's Office of the Twelfth Judicial Circuit,* 927 F.Supp. 1479, 1483 (M.D.Ala.1996); *Patrick v. City of Florala,* 793 F.Supp. 301, 305 (M.D.Ala.1992).

administrator, Inez Frazier was responsible for administering the policies and procedures of the Sheriff's department. . ." (Smith Aff. ¶ 8), whereas Sheriff Smith alone created the Department's policies. (Smith Dep. at 12). The Fourth Circuit has held that a deputy sheriff who merely administered the sheriff's policies was not considered part of the sheriff's personal staff. *Gregory*, 818 F.2d at 1117. *But see Owens*, 654 F.2d at 1376 (holding that the undersheriff who was second in command and had a close working relationship with the sheriff was a personal staff member). Since Defendants have not presented sufficient evidence for the Court to find as a matter of law that Plaintiff falls within the personal staff exception of Title VII, summary judgment is inappropriate on this exception.

## B. Proper Defendants

The individual defendants, Sheriff Smith and Easterling, argue that they are improper defendants in this Title VII action for three reasons. First, Defendants contend that they are not "employers" for purposes of Title VII.[3] (Defs.' Br. Supp. Summ. J. at 26). Second, Defendants claim that they were not named in Plaintiff's charge with the Equal Employment Opportunity Commission ("EEOC") and should be dismissed. (*Id.* at 26 n. 10). Third, Defendants argue that the claims against them in their official capacities are redundant with the claim brought against the Camden County Board of Commissioners. (*Id.* at 26).

### 1. *Plaintiff's Employer*

As an initial matter, actions under Title VII and the ADA must be brought against the plaintiff's employer, because "[t]he relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). *See also Mason v. Stallings,* 82 F.3d 1007, 1009 (11th

Cir.1996); *Clark v. City of Macon,* 860 F.Supp. 1545, 1550 (M.D.Ga.1994).

There is no allegation that Defendant, Easterling, was Plaintiff's "employer" within the meaning of Title VII. However, it is not clear whether Plaintiff was an employee of Sheriff Smith or the Camden County Board of Commissioners. Defendant, Smith, had the sole power to hire and terminate Plaintiff. (Smith Dep. at 34, 47, 65; Smith Aff. ¶¶ 6–7). *See also Employees Retirement Sys. v. Lewis,* 109 Ga.App. 476, 480, 136 S.E.2d 518, 521 (1964) (holding that sheriffs alone are entitled to appoint and discharge their employees). In contrast, the County was responsible for paying Plaintiff's salary. (Smith Dep. at 48–49; Proctor Dep. at 13). This fiscal responsibility may make Camden County her employer. Construing the facts in the light most favorable to Plaintiff, there appears to be a genuine issue of material fact as to whether Defendant, Smith, in his official capacity as Sheriff, or the Camden County Board of Commissioners was Plaintiff's employer. Accordingly, both should remain as Defendants. However, Plaintiff's Title VII and ADA charges against Defendant, Easterling, in any capacity, and Defendant, Smith, in his individual capacity, are improper.

### 2. *Naming Requirement*

Next, Defendant, Smith, contends that he was not named in Plaintiff's EEOC charge and should be dismissed. (Defs.' Br. Supp. Summ. J. at 26 n. 10). Indeed, Title VII requires that an individual filing a charge with the EEOC name all individuals against whom the charge is brought. 42 U.S.C. § 2000e–5(f)(1) (1994); 29 C.F.R. § 1601 .12(a)(2) (1997). Although the Eleventh Circuit liberally construes the naming requirement of Title VII, a subsequent civil action may not be brought against an individual not named in an EEOC charge. *Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1358 (11th Cir.1994); *Bell v. Crackin Good*

---

**3.** Defendants contend that this analysis also applies to actions brought under the Americans with Disabilities Act. (Defs.' Br. Supp. Summ. J. at 26). Indeed, the ADA defines an employer in nearly identical language to that found in Title VII. Furthermore, the Eleventh Circuit has held

that the ADA imposes no individual liability, but is limited to employer liability. *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996). Therefore, this analysis applies both to the Title VII and ADA claims.

*Bakers, Inc.,* 777 F.2d 1497, 1502 (11th Cir. 1985); *Clark,* 860 F.Supp. at 1550. The purpose of the naming requirement is to provide the defendant with notice of the charges against him and to inform the EEOC of all involved parties so it can accomplish its investigatory and conciliatory goals. *Clark,* 860 F.Supp. at 1550–51. Only where the purposes of Title VII have been fulfilled may such an action be brought against an individual who was not named in the EEOC charge. *Moore v. Alabama State Univ.,* 945 F.Supp. 235, 240 (M.D.Ala.1996); *Clark,* 860 F.Supp. at 1551; *Evans v. Meadow Steel Prods., Inc.,* 572 F.Supp. 250, 255 (N.D.Ga.1983). The burden is on the plaintiff to explain why the individual was not named and to demonstrate that the purposes of Title VII have been satisfied regardless of the omission. *Hulsey v. Gunn,* 905 F.Supp. 1067, 1071 (N.D.Ga. 1995); *Clark,* 860 F.Supp. at 1551.

In this case, Plaintiff named "Camden County Sheriff's Department" as the party who discriminated against her. (Defs.' Br. Supp. Summ. J. Exhibit B). Surely the Camden County Sheriff would have received notice of such a claim. Moreover, Plaintiff named Sheriff Smith in describing the particular events in her EEOC charge. Since Plaintiff named the office of the Camden County Sheriff and her charge fulfilled the purposes of Title VII, the Court finds no reason to dismiss this action as to Defendant Sheriff Smith, in his official capacity because he was not named in the EEOC complaint.

### 3. *Redundant Defendants*

Defendants' final argument is that a suit against both Sheriff Smith, in his official capacity, and the Camden County Board of Commissioners is redundant, and that the action against Sheriff Smith should be dismissed. (Defs.' Br. Supp. Summ. J. at 26). In support of this contention, Defendants rely on a case that holds that an action against a person in his official capacity generally equates to an action against the entity that person represents. *Waring v. City of Philadelphia,* No. CIV A 96–CV–1805, 1996 WL 208348 *2 (E.D.Pa. Apr. 26, 1996). *See also Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878, 884 (1985); *Busby,* 931 F.2d at 766.

However, the Court must analyze state law to determine the relationship between state entities. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482–83, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452, 465 (1986). Under Georgia law, sheriffs are vested with ultimate authority in employment decisions. *See Lewis,* 109 Ga.App. at 480, 136 S.E.2d at 521; *Johnson v. Ballard,* 644 F.Supp. 333, 337 (N.D.Ga. 1986). Additionally, the sheriff and the deputy sheriffs must post bonds as a hedge against potential liability, and sheriffs are liable for the misconduct of their deputies and jailers. O.C.G.A. §§ 15–16–5, 15–16–23, 15–16–24 (1994). Furthermore, Sheriff Smith acts independently of Camden County, except for the County's fiscal review and support of the Sheriff's department. (Smith Dep. at 49.) There is no evidence before the Court to support the conclusion that Sheriff Smith is an agent of Camden County, or that the County ultimately is liable for his misconduct. Construing the facts in the light most favorable to Plaintiff, the actions brought against Sheriff Smith, in his official capacity, and the Camden County Board of Commissioners are not redundant, and both should proceed.

### C. Hostile Work Environment

Plaintiff contends that Defendants created a racially hostile work environment. (Compl. ¶¶ 32–33). Defendants claim that Plaintiff fails to establish all the necessary elements to state a cause of action for such a claim. (Defs.' Br. Supp. Summ. J. at 12). Defendants argue that Plaintiff has failed to prove that the harassment altered a term, condition or privilege of her employment and that they took prompt remedial action. (Defs.' Br. Supp. Summ. J. at 12–13). Plaintiff, however, contends that Easterling repeatedly used racial slurs to refer to her and the black inmates, and that this practice undermined her authority and eroded her ability to administer the jail successfully. (Pl.'s Br. Opposing Summ. J. at 10).

A racially hostile work environment is one "heavily charged with racial discrimination." *Busby,* 931 F.2d at 785. In order to state a claim for hostile work environment, the plaintiff must prove that her

employer subjected her to unwelcome conduct that was based on race and was so "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Webb v. R & B Holding Co.*, 992 F.Supp. 1382, 1388 (S.D.Fla.1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 60 (1986)); *Armstead v. City of St. Petersburg*, No. 95–1548–Civ–T–17C, 1997 WL 724420, *5 (M.D.Fla. Nov. 13, 1997). The harassment, though, does not need to rise to such a level that it causes the employee to suffer a nervous breakdown or seriously affect the employee's well-being. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295, 301–2 (1993). The Court must consider the totality of the circumstances to determine if the harassment was so severe and pervasive as to create a hostile work environment. *Ellis v. Wal-Mart Stores, Inc.*, 952 F.Supp. 1522, 1527 (M.D.Ala.1996). Furthermore, the behavior need not be directed at the plaintiff to contribute to an offensive environment. *Busby*, 931 F.2d at 785; *Mitchell v. Carrier Corp.*, 954 F.Supp. 1568, 1577 (M.D.Ga.1995), *aff'd*, 108 F.3d 343 (11th Cir.1997).

Considering Plaintiff's evidence as a whole and in the light most favorable to her, she has presented sufficient evidence to raise a genuine issue of material fact as to whether Defendants' conduct was so severe and pervasive as to alter the conditions of employment. Easterling repeatedly used racial slurs in the workplace, at times directing the comments toward Plaintiff. (Frazier Dep. at 31, 41, 49–50, 55; Clark Aff. ¶ 6). Every time he used such terms, the work environment became more polluted with racial animosity. Plaintiff's position as jail administrator required her to maintain discipline and authority. A jury could find that Easterling's racially derogatory comments undermined Plaintiff's confidence and authority and affected her employment. Although the mere utterance of a racial epithet is insufficient to alter the conditions of employment, the repeated barrage of racially offensive remarks, such as in this case, may create a hostile environment. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995); *Brassfield v. Jack McLen-*

*don Furniture, Inc.*, 953 F.Supp. 1438, 1449 (M.D.Ala.1996); *Patterson v. Augat Wiring Sys., Inc.*, 944 F.Supp. 1509, 1517 (M.D.Ala. 1996); *Coney v. Department of Human Resources*, 787 F.Supp. 1434, 1443 (M.D.Ga. 1992).

Defendants next claim that they took prompt remedial action after Plaintiff complained to Sheriff Smith about Easterling's behavior to Sheriff Smith. (Defs.' Br. Supp. Summ. J. at 15). However, that assertion is not supported by the evidence in the record. In fact, Easterling continued to utter racial slurs in the workplace up until Plaintiff's termination. (Frazier Dep. at 49–50; Clark Aff. ¶ 6). The fact that some of these remarks were not directed at Plaintiff is not determinative. *See Busby*, 931 F.2d at 785; *Mitchell*, 954 F.Supp. at 1577. Since Plaintiff informed Sheriff Smith of Easterling's comments, yet the derogatory remarks continued, the Court cannot find as a matter of law that Defendants took prompt remedial action after learning of the harassment.

### 1. *180–Day Filing Requirement*

Defendants argue that Plaintiff cannot maintain her claim because she fails to allege any incidents of racial harassment within the 180–day period preceding the date of her EEOC charge. (Defs.' Br. Supp. Summ. J. at 12 n. 5). As a prerequisite to filing a Title VII lawsuit, a plaintiff must file a charge with the EEOC within 180 days of the alleged discrimination. 42 U.S.C.A. § 2000e–5(e) (1994). *See also Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir.1993); *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992); *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir.1980). If the plaintiff fails to do so, the claim is procedurally barred.

Courts have excepted to the 180–day rule where the plaintiff's untimely claim stemmed from a continuing violation. *See Beavers*, 975 F.2d at 796; *Roberts v. Gadsden Mem'l Hosp.*, 850 F.2d 1549, 1550 (11th Cir.1988); *Gonzalez*, 610 F.2d at 249. In order to establish a continuing violation, a plaintiff must demonstrate that the untimely act is part of an ongoing discriminatory prac-

tice or policy. *Roberts,* 850 F.2d at 1550. Isolated acts of discrimination are not sufficient to invoke the continuing violation exception, and the harm plaintiff suffers must be more than the lasting impact of the violation about which she complains. *Id.*

██ In this case, Plaintiff filed her EEOC charge on October 18, 1995 alleging a racially hostile work environment. Although Plaintiff relies on specific instances of discrimination to support her claim that a hostile environment existed, she alleges that the hostile environment was a continuing violation. *See Morrow v. Auburn Univ.,* 973 F.Supp. 1392, 1401 (M.D.Ala.1997) (holding that a claim of hostile work environment is a continuing violation because it involves a pattern of offensive conduct). *See also Patterson,* 944 F.Supp. at 1517; *Quillen v. American Tobacco Co.,* 874 F.Supp. 1285, 1292–93 (M.D.Ala.1995). Furthermore, it is unclear from the record before the Court when all of the specific incidents occurred. Plaintiff admits in her deposition that Easterling called her a "nigger" once in 1989, but she cannot remember the other dates when Easterling used such language. (Frazier Dep. at 37, 41). Furthermore, others heard derogatory terms used in reference to Plaintiff within the 180 day period prior to her filing the EEOC charge. (Frazier Dep. at 49–50; Clark Aff. ¶ 6). Presumably, Plaintiff's harassment ended when she was terminated on August 1, 1995, within 180 days of her charge. Accordingly, the Court cannot find as a matter of law that no racially hostile work environment existed in the 180 days prior to Plaintiff's EEOC charge.

### D. Disparate Treatment

██ Plaintiff alleges that Defendants violated Title VII by treating her differently than similarly situated non-minority individuals. Defendants, however, contend that Plaintiff has not presented any direct evidence of discrimination, has failed to establish a prima facie case of discrimination, and that there is a legitimate nondiscriminatory reason for Plaintiff's termination. (Defs.' Br. Supp. Summ. J. at 16–20). Each of Defendants' arguments will be discussed below.

A plaintiff alleging disparate treatment must show the defendant intentionally discriminated on the basis of race, through the use of either direct or circumstantial evidence. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1375 (11th Cir.1996); *Ellis,* 952 F.Supp. at 1525. Direct evidence, which is rarely found in discrimination cases, is that evidence that "proves the existence of a fact in issue without inference of presumption." *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987). *See also Mayfield,* 101 F.3d at 1375. If the evidence presented merely suggests discrimination, then it is circumstantial. *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir.), *reh'g denied,* 130 F.3d 446 (1997). If the plaintiff relies on circumstantial evidence, then the Court must employ the familiar *McDonnell Douglas* framework. *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 962 (11th Cir.1997); *Ellis,* 952 F.Supp. at 1526.

Plaintiff presents direct evidence of discrimination in this case; that is, Easterling used racial slurs in the workplace. (Frazier Dep. at 31, 41, 49–50, 55; Clark Aff. ¶ 6). However, in order to satisfy the demands of Title VII, Plaintiff must present direct evidence that the decision-maker substantially relied on an illegitimate criterion, race, in making the challenged decision. *Evans,* 131 F.3d at 962; *EEOC v. Beverage Canners Inc.,* 897 F.2d 1067, 1071 (11th Cir.1990). In this case, Plaintiff has presented direct evidence of Easterling's racist attitudes, but has not presented any direct evidence that Easterling was the decision-maker. *See Wilson v. City of Aliceville,* 779 F.2d 631, 634 (11th Cir.1986) (holding that a racial slur by a decision-maker is direct evidence of discrimination). Defendants argue that Sheriff Smith was the decision-maker and Plaintiff has failed to present any evidence that Smith harbored discriminatory intent. In the absence of any direct evidence that Easterling was the decision-maker, the Court next must determine whether any circumstantial evidence of discrimination exists.

██ As stated above, when a plaintiff relies on circumstantial evidence of discrimination, the Court utilizes the *McDonnell Douglas* framework. *Evans,* 131 F.3d at 962; *Ellis,* 952 F.Supp. at 1526. Under this framework, the plaintiff first must establish a prima facie case of disparate treatment. *Ev-*

*ans,* 131 F.3d at 962; *Wilson,* 779 F.2d at 634. After the plaintiff has fulfilled this requirement, the defendant must articulate a legitimate nondiscriminatory reason for the action taken. *Evans,* 131 F.3d at 962; *Wilson,* 779 F.2d at 634. The burden then shifts back to the plaintiff, who must demonstrate that the defendant's proffered reasons are a mere pretext for discrimination. *Evans,* 131 F.3d at 962; *Wilson,* 779 F.2d at 634.

### 1. *Prima Facie Case*

Defendants claim that Plaintiff has failed to present any evidence that she was treated less favorably than similarly situated nonminority employees and has failed to establish a prima facie case of disparate treatment. (Defs.' Br. Supp. Summ. J. at 18). Plaintiff contends that white male jail administrators, Easterling and Proctor, were not terminated after multiple jail escapes, whereas she was terminated after a single jail break. (Pl.'s Br. Opposing Summ. J. at 12–13).

In order to establish a prima facie case of racial disparate treatment, a plaintiff must prove the following elements: (1) she is a member of a racial minority, (2) she suffered an adverse employment action, (3) the defendant treated other similarly situated nonminority employees more favorably, and (4) she was qualified for the position. *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1310 (11th Cir.1998); *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). Plaintiff's burden is not an onerous one, she only need present sufficient evidence to create an inference of discrimination. *Jones,* 137 F.3d at 1310.

At this stage, Plaintiff has presented sufficient evidence as to her prima facie case to survive summary judgment. Defendants do not dispute that Plaintiff is a member of a racial minority, that she suffered an adverse employment action, or that she was qualified to fill the position. Defendants' sole argument is that Plaintiff cannot identify a similarly situated individual that was treated differently. Defendants rely on the fact that at the time Plaintiff was terminated, the other jail officials were allowed to resign or they, too, would have been terminated. However, the Court is not limited to consider those individuals. Indeed, the Court only must

consider those individuals who are similarly situated, but that includes all individuals in the same position as the plaintiff faced with the same accusation. *Holifield,* 115 F.3d at 1562; *Webb,* 992 F.Supp. at 1386. Plaintiff argues that Easterling and Proctor, two other jail administrators were not terminated after jail breaks occurred. These individuals are similarly situated to Plaintiff. They served in the same capacity within the Sheriff's department and were accused of the same offense as Plaintiff. (Smith Dep. at 32, 33, 37, 44; Easterling Dep. at 17–19; Proctor Dep. at 9, 14). However, neither of these men were terminated as a result of the escapes under their administration. (Smith Dep. at 32–33). Accordingly, Plaintiff has presented sufficient evidence that she was treated less favorably than similarly situated employees.

### 2. *Legitimate Nondiscriminatory Reason*

Defendants argue that there are several legitimate nondiscriminatory reasons for Plaintiff's termination. (Defs.' Br. Supp. Summ. J. at 19). Specifically, Sheriff Smith claims that Plaintiff was terminated because she failed to correct problems at the jail, other employees complained that she favored the inmates, and the Department received adverse publicity from the jail escape. (Smith Dep. at 19; Smith Aff. ¶¶ 13–14; Easterling Dep. at 15–16). Plaintiff argues that these reasons are pretextual and do not warrant the award of summary judgment. (Pl.'s Br. Opposing Summ. J. at 13).

A plaintiff may prove that the defendant's reason is pretextual by showing that the decision likely was influenced by a discriminatory motive or that the defendant's explanation is unworthy of credence. *Mayfield,* 101 F.3d at 1376. At the summary judgment stage, the plaintiff must present sufficient evidence to demonstrate a genuine issue of material fact as to the truth or falsity of employer's proffered reason. *Evans,* 131 F.3d at 964.

In this case, Plaintiff has presented sufficient evidence to raise a genuine issue as to the validity of Defendants' proffered reasons. Easterling and Proctor, while serving

as jail administrators, suffered from security problems within the jail, including escapes and riots, yet were not terminated. (Smith Dep. at 32, 33, 37, 44; Easterling Dep. at 17–19; Proctor Dep. at 9, 14). Furthermore, Plaintiff was on temporary medical leave at the time of the jail escape for which she was fired. (Frazier Aff. ¶ 5; Clark Aff. ¶ 5). Even Easterling admits that the jail administrator is a prime target of employee complaints, but that these complaints rarely amount to anything substantive. (Easterling Dep. at 16).

The suspicious circumstances that surrounded Plaintiff's termination undercut the credibility of Defendants' explanations. Both Easterling and Smith acknowledge that they discussed terminating Plaintiff. (Smith Dep. at 20; Easterling Dep. at 13). Additionally, Bob Godley ("Godley") testified that Easterling threatened Plaintiff before her termination by shouting, "If you don't do it my way, I'll fire your f——ing ass." (Godley Aff. ¶ 9). Then after Plaintiff's discharge, Godley heard Sheriff Smith yell at Easterling, referring to Plaintiff's termination, "If you f——ed this one up, Charlie, it's your ass." (*Id.* ¶ 18). These statements, combined with the racial slurs uttered by Easterling, create an inference that Easterling and Smith cooperated in the discriminatory removal of Plaintiff and cast doubt upon the veracity of Defendants' legitimate nondiscriminatory reasons. Accordingly, summary judgment is inappropriate on Plaintiff's disparate treatment claim.

### III. *Americans with Disabilities Act*

Defendants contend that Plaintiff cannot establish a prima facie case of discrimination in violation of the ADA. (Defs.' Br. Supp. Summ. J. at 22–26). Specifically, Defendants argue that she is unable to demonstrate that she suffers from a "disability" as defined in the ADA and that she was discriminated against on the basis of this disability. (*Id.*) Plaintiff contends that she has presented sufficient evidence to survive summary judgment as to all of the elements of a prima facie violation of the ADA. (Pl.'s Br. Opposing Summ. J. at 15).

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities ...." 42 U.S.C. § 12101(b)(1) (1995). The act prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1995). *See also Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). In accordance with its remedial purposes, the ADA is to be construed broadly. *Kornblau v. Dade County,* 86 F.3d 193 (11th Cir.1996).

The ADA imposes a duty upon the employer to provide reasonable accommodations for known disabilities unless the accommodations would impose an undue hardship upon the employer. *Morisky,* 80 F.3d at 447 (citing 42 U.S.C. § 12112(b)(5)(A) (1995)). In order to establish a prima facie case under the ADA, Plaintiff must satisfy three requirements. *Terrell v. USAir, Inc.,* 132 F.3d 621, 624 (11th Cir.1998); *Morisky,* 80 F.3d at 447. She must show that she is a "qualified individual," has a disability, and was discriminated against because of that disability. *Terrell,* 132 F.3d at 624; *Morisky,* 80 F.3d at 447.

### A. Disability

Defendants assert that they are entitled to summary judgment because Plaintiff does not have a disability. Defendants maintain that Plaintiff is not disabled within the meaning of the ADA because she has not presented any evidence that her impairment has restricted her from performing an entire class of jobs. (Defs.' Br. Supp. Summ. J. at 23). Plaintiff, however, claims that her impairment, carpal tunnel syndrome, has substantially limited her performance of major life activities. (Pl.'s Br. Opposing Summ. J. at 15).

Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (1995). There are two

components of an actual disability under the ADA. 42 U.S.C. § 12102(2)(A). First, the person must have a physical or mental impairment. *Id.* Second, that impairment must substantially limit one or more of the person's major life activities. *Id.*

Here, Plaintiff does suffer from a physical impairment, carpal tunnel syndrome. (Frazier Dep. at 77). At the time of her termination, Plaintiff was on temporary medical leave due to the condition. (Plaintiff Aff. ¶ 5; Clark Aff. ¶ 5). Before that, she often would have to miss work for medical appointments and treatment. Her injuries are well-documented and it is undisputed that medical restrictions were placed on her job duties. Whether her impairment substantially limits one or more major life activities, however, serves as the main dispute between the parties.

Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1997). The EEOC has directed that " '[m]ajor life activities' are those basic activities that the average person in the general population can perform with little or no difficulty." 29 C.F.R. § 1630.2(i) app. A life activity must be substantially limited for it to rise to the level of a disability. 42 U.S.C. § 12102(2)(A). The determination of whether an individual's major life activities have been restricted depends on the facts of each case. *See* 29 C.F.R. § 1630.2(j) app. (1997). Three factors are considered to determine whether substantial limitations exist on these activities: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j) (1997). *See also Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 871 (2nd Cir.1998); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995).

Defendants contend that Plaintiff must demonstrate that she is unable to perform a wide variety of jobs within the workplace. (Defs.' Br. Supp. Summ. J. at 23). However, Defendants' argument is misguided since Plaintiff does not contend that working is the major life activity limited by her disability. In fact, working is only one of many major life activities that could be affected by a disability. *See* 29 C.F.R. § 1630.2(i); *Terrell*, 132 F.3d at 624 n. 4; *Crumpton v. St. Vincent's Hospital*, 963 F.Supp. 1104, 1112 (N.D.Ala.1997). Only if an individual is not limited in any other major life activity should the Court consider the limitations placed on an individual's work performance. *See* 29 C.F.R. § 1630.2(j) app.; *O'Neal v. Atlanta Gas & Light Co.*, 968 F.Supp. 721, 724 (S.D.Ga.), *aff'd*, 122 F.3d 1079 (11th Cir. 1997).

In the case at bar, Plaintiff has presented sufficient evidence for a jury to conclude that her major life activities have been affected by her claimed disability. The resolution of whether an impairment substantially limits an individual's major life activities is best left for a jury. *Haysman v. Food Lion*, 893 F.Supp. 1092, 1100 (S.D.Ga.1995). Plaintiff has difficulty walking and sitting, (Frazier Dep. at 108–9). She also has been unable to shower herself or clean her own house. (*Id.*) These activities are encompassed in the major life activity, "caring for self." *Ryan*, 135 F.3d at 871; *Dutcher*, 53 F.3d at 726. The inability to perform household chores can rise to the level of a disability for purposes of the ADA. *Robinson–Scott v. Delta Air Lines, Inc.*, 4 F.Supp.2d 1183, 1185–86 (N.D.Ga. 1998). Accordingly, the determination of whether Plaintiff is substantially limited in caring for herself should be left to a jury.

## B. Discrimination

Defendants argue that Plaintiff cannot show she was discriminated against on the basis of her disability and has failed to establish a prima facie case under the ADA. (Defs.' Br. Supp. Summ. J. at 24). Defendants allege that Plaintiff was terminated because of the jail escape and not due to any disability. (*Id.* at 25). Plaintiff contends that she has provided sufficient evidence for a jury to find that she was discriminated against on the basis of her disability. (Pl.'s Br. Opposing Summ. J. at 16–17).

The third element of a prima facie case under the ADA is proof that the employer discriminated against the plaintiff because of the plaintiff's disability. *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir.1996), *cert. denied*, — U.S. ——,

117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). The familiar *McDonnell Douglas* framework, discussed above, is used to determine whether the employer engaged in discriminatory conduct. *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir.1986); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish this element, the plaintiff first must establish that there was discrimination based upon the alleged disability. *Johnson v. Boardman Petroleum, Inc.*, 923 F.Supp. 1563, 1567 (S.D.Ga.1996). The burden of production then shifts to the employer to rebut this allegation of discrimination by articulating legitimate, non-discriminatory reasons for its actions. *Id.* Lastly, the burden shifts back to the plaintiff to show that the asserted reasons are mere pretexts for discrimination. *Id.* (citation omitted). Although the burden of production shifts, the burden of persuasion remains with the plaintiff at all times. *Id.*

Plaintiff alleges that she was discriminated against on the basis of her disability in two ways: she was terminated and Defendants failed to make reasonable accommodations for her. Considering her termination first, Plaintiff has presented sufficient evidence to support a finding that she was improperly terminated on the basis of her disability. As discussed above, Plaintiff has presented evidence that she suffers from a disability protected by the ADA, and Defendants do not dispute that they were aware of her condition. In fact, Easterling repeatedly complained about Plaintiff's medical condition and the fact that she missed work because of it. (Clark Aff. ¶¶ 13, 18). Defendants provide the same nondiscriminatory reason for Plaintiff's termination, the jail escape. However, Easterling's complaints about Plaintiff's condition combined with the interchange between Easterling and Smith after Plaintiff's termination cast doubt upon the veracity of Defendants' proffered reason. *See* discussion *supra* II.D.2.

Independently, Plaintiff contends she was discriminated against because Defendants failed to make reasonable accommodations for her disability. When an employer fails to make reasonable accommodations, it is considered to have discriminated in violation of the ADA. *Stewart v. Happy Herman's Che-* *shire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997). Plaintiff demanded an ergonomically correct desk and keyboard, as well as an assistant to help her with typing. (Plaintiff Dep. at 106). These requests were denied. (Plaintiff Aff. ¶ 6). The determination of whether an accommodation is reasonable is a highly fact specific analysis that varies based on the circumstances of each individual case. *Terrell*, 132 F.3d at 626; *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1527 (11th Cir.1997). Construing the facts in the light most favorable to Plaintiff, a jury could find that Plaintiff's demands were reasonable and Defendants' failure to make such accommodations constitutes discrimination.

## IV.  *42 U.S.C. § 1983*

Plaintiff alleged in her complaint that Defendants deprived her of her rights protected by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983. (Compl.¶¶ 46–54). Defendants argue that Plaintiff failed to establish the requisite elements of such a claim. (Defs.' Br. Supp. Summ. J. at 21). Plaintiff fails to respond to this argument. Pursuant to the Local Rules of the Southern District of Georgia, "[f]ailure to respond shall indicate that there is no opposition to the motion." Local R. 7.5. Additionally, Plaintiff appears to concede to Defendant's contention. Plaintiff filed with the Court a document entitled "Theory of Recovery," which did not contain any reference to a violation of 42 U.S.C. § 1983. Accordingly, Defendants' Motion for Summary Judgment will be granted as to this claim.

## V.  *Intentional Infliction of Emotional Distress*

Defendants contend that their behavior did not rise to the appropriate level to sustain Plaintiff's claim for intentional infliction of emotional distress. (Defs.' Br. Supp. Summ. J. at 32–33). Plaintiff argues that a question of fact remains and summary judgment would be inappropriate as to this claim. (Pl.'s Br. Opposing Summ. J. at 23).

Intentional infliction of emotional distress is a tort that protects an individual from suffering extreme emotional distress in

the face of outrageous and egregious behavior. *Hardin v. City Wide Wrecker Serv., Inc.*, 232 Ga.App. 617, 502 S.E.2d 548, 550 (1998). The defendant's behavior must be so extreme that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'Outrageous!'" *Id.* (quoting *Williams v. Stepler*, 227 Ga.App. 591, 594, 490 S.E.2d 167, 170 (1997)). It is a question of law for the Court to determine if the defendant's behavior is egregious enough to sustain the claim. *Id.; Willis v. United Family Life Ins. .*, 226 Ga.App. 661, 666, 487 S.E.2d 376, 382 (1997). Examples of such outrageous behavior are extremely rare. *Willis*, 226 Ga.App. at 666, 487 S.E.2d at 382.

Defendants' behavior in this case, although inappropriate and boorish, does not rise to the level of "outrageous conduct" that would be grounds for a claim of intentional infliction of emotional distress. Plaintiff alleges that Defendants used racial slurs, verbally intimidated her, and undermined her authority. (Frazier Dep. at 37, 41). This behavior, in the absence of a threat of force, is not outrageous or extreme under Georgia law. *See Willis*, 226 Ga.App. at 666, 487 S.E.2d at 382 (holding that insults and threats were not actionable); *Sossenko v. Michelin Tire Corp.*, 172 Ga.App. 771, 772, 324 S.E.2d 593, 594 (1984) (holding that harassment was not outrageous behavior); *Bowers v. Estep*, 204 Ga. App. 615, 617, 420 S.E.2d 336, 338 (1992) (holding that a supervisor who threatened, intimidated and humiliated employee did not engage in outrageous conduct); *Fox v. Ravinia Club, Inc.*, 202 Ga.App. 260, 262, 414 S.E.2d 243, 245 (1991) (finding that hostile, intimidating and abusive behavior by a manager was not extreme). *But see Davis v. Copelan*, 215 Ga.App. 754, 765, 452 S.E.2d 194, 203 (1994) (holding that interrogations conducted with armed guards present was outrageous behavior); *American Finance Corp., v. Coots*, 105 Ga.App. 849, 125 S.E.2d 689 (1962) (holding that a bill collector who terrorized the plaintiff and his pregnant wife engaged in outrageous conduct); *Stephens v. Waits*, 53 Ga.App. 44, 184 S.E. 781 (1936) (holding that a defendant who threatened

mourners at grave side with a gun was liable for intentional infliction of emotional distress). Accordingly, summary judgment is appropriate on Plaintiff's claim of intentional infliction of emotional distress.[4]

## VI. *Punitive Damages*

Defendants contend that Plaintiff cannot seek punitive damages against a government entity and summary judgment should be granted as to this demand. (Defs.' Br. Supp. Summ. J. at 27). Plaintiff responds that she is seeking punitive damages only against Smith and Easterling. (Pl.'s Br. Opposing Summ. J. at 19–20). Since Plaintiff is not seeking any punitive damages against the government entity, Camden County Board of Commissioners, there is no dispute for the Court to resolve at this time. Accordingly, Plaintiff may ask for punitive damages against Defendant, Smith, but not against the other Defendants.

## *CONCLUSION*

Since the Court finds no need for oral argument, Plaintiff's request for oral argument is **DENIED**. Furthermore, the Court concludes that Defendants' Motion for Summary Judgment is **GRANTED** as to Easterling's and Smith's individual liability under Title VII, Plaintiff's claim under 42 U.S.C. § 1983, and her claim for intentional infliction of emotional distress. However, Defendants' Motion for Summary Judgment as to the remaining claims should be and is hereby **DENIED**.

---

4. Since summary judgment will be granted on Plaintiff's only state law claim, it is unnecessary for the Court to address Defendants' arguments regarding the statute of limitations or sovereign immunity.